BUCHALTER, A Professional Corporation
VALERIE BANTNER PEO (SBN: 260430)
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Fax: (415) 227-0770
Email: vbantnerpeo@buchalter.com

Attorneys for Creditor
JPMORGAN CHASE BANK, N.A.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| In re | Bankruptcy Case No. 19-41283 (WJL) |
| JADOOTV, INC. | Chapter 11 |
| Debtor. | R.S. No. BN-001 |
| | **MOTION TO APPROVE STIPULATION FOR RELIEF FROM THE AUTOMATIC STAY** |
| | Date: September 9, 2020<br>Time: 10:30 a.m.<br>Ctrm: TELEPHONIC<br>Room 220<br>1300 Clay Street<br>Oakland, CA 94612 |

**TO THE HONORABLE WILLIAM J. LAFFERTY, THE DEBTORS AND THEIR**

**COUNSEL OF RECORD, AND ALL OTHER INTERESTED PARTIES:**

JPMorgan Chase Bank, N.A. ("**JPMC**") hereby moves the Court ("**Motion**") for an order

granting relief from the automatic stay that authorizes JPMC to effectuate its setoff rights under

applicable law, as contemplated by the *Stipulation for Relief from the Automatic Stay*

("**Stipulation**") entered into by JPMC and JadooTV, Inc. ("**Debtor**").

The Motion is made pursuant to sections 105, 362 and 553 of chapter 11 of the United

States Code (the "**Bankruptcy Code**"), together with Federal Rules of Bankruptcy Rules (the

"**Bankruptcy Rules**") 4001, 9013 and 9014.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND

The following facts are set forth in the recitals to the Stipulation, an executed copy of which is attached hereto as **Exhibit 1**.

#### A. The Bankruptcy Case.

On May 31, 2019, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

The Debtor continues to operate its business as a debtor in possession. No trustee or statutory committee of creditors has been appointed.

#### B. The Paycheck Protection Program Loan.

In response to the negative economic impact of the coronavirus global pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("**CARES Act**"). Pub. L. No. 116-136, 134 Stat. 281 (2020). Among other things, the CARES Act created the Paycheck Protection Program ("**PPP**"), a new government-guaranteed loan program administered by the Small Business Administration ("**SBA**"), which is designed to help businesses keep their workforce employed during the global health crisis. 15 U.S.C. §636(a)(36).

To facilitate the expeditious administration of the PPP loan program, the SBA issued a series of interim final rules, which among other things, provide that debtors in bankruptcy are ineligible for PPP loans. 85 Fed. Reg. 23450, 23451 § III.4. The SBA's interim final rules also provide that the lender's underwriting for PPP loans is limited to confirming receipt of the borrower's PPP certification, verifying that the payroll information provided by the borrower is mathematically correct and following certain requirements of the Bank Secrecy Act (codified at 31 U.S.C. § 5311). 85 Fed. Reg. 20811, § III.3.b.

On or about April 7, 2020, the Debtor submitted to JPMC a PPP Lender Application Form (the "**PPP Application**"). JPMC contends that the PPP Application represented that Debtor was

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

1   not "presently involved in any bankruptcy."

2           JPMC approved the PPP Application. On May 1, 2020, JPMC funded the PPP loan in the

3   amount of $224,460.00 (the "**PPP Funds**") pursuant to a Note (the "**PPP Note**"). The PPP Funds

4   were deposited in the Debtor's deposit account maintained by JPMC (the "**Account**").

5           JPMC contends that after it funded the PPP loan to the Debtor, JPMC discovered that the

6   Debtor was a debtor in bankruptcy and therefore JPMC asserts that the PPP Application

7   contained a false representation. JPMC contends that a false representation made in the PPP

8   Application is an event of default under the PPP Note. Upon a default, JPMC asserts that it may

9   accelerate the balance due under the PPP Note.

10          JPMC contends that the Deposit Account Agreement which governs the Account (the

11  "**Account Agreement**") gives JPMC both the right to offset amounts owed to JPMC, and the

12  right to freeze the Account to avoid a risk of loss to JPMC.

13          On or about June 4, 2020, JPMC placed an administrative hold on the Account in the

14  amount of the PPP Funds.

15          **C.      The Present Dispute.**

16          On June 20, 2020, the Debtor filed its *Motion of Debtor for an Order Authorizing*

17  *Incurrence of Unsecured Debt in the Form of Paycheck Protection Program Loan Pursuant to 11*

18  *U.S.C. §§ 364(b) and 105(a) Nunc Pro Tunc to April 7, 2020* [Dkt. No. 271] (the "**PPP Motion**").

19  By the PPP Motion, the Debtor sought *nunc pro tunc* authority to obtain post-petition financing in

20  the form of the PPP Note. The Debtor also contends in the PPP Motion that the administrative

21  hold JPMC placed on the Account violates the automatic bankruptcy stay of 11 U.S.C. § 362(a).

22          JPMC contends that an administrative hold on a deposit account to preserve setoff rights

23  does not violate the automatic stay under the holding of *Citizens Bank. v. Strumpf*, 516 US 16, 21

24  (1995).

25          JPMC asserts that, as of the date of the Stipulation, the default under the PPP Note totals

26  $224,460.00, i.e., the amount of the PPP Funds

27  **II.     BASIS FOR RELIEF**

28          By this Motion, JPMC seeks entry of an order approving the Stipulation in a form

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

approved by Debtor's counsel and attached hereto as **Exhibit 2**.

At the request of a party in interest, and after notice and a hearing, the Court may terminate, annul, modify, or condition the automatic stay "for cause." 11 U.S.C. § 362(d)(1). "Courts generally recognize that, by establishing a right of setoff, the creditor has established a prima facie showing of 'cause' for relief from the automatic stay under § 362(d)(1). *United States v. Gould (In re Gould)*, 401 B.R. 415, 426, (9th Cir. B.A.P. 2009).

Bankruptcy Rule 4001(d)(1) permits a party to move the Court for approval of an agreement to modify or terminate the stay. Fed. R. Bankr. P. 4001(d)(1).

As set forth in the Stipulation, the Debtor consents to termination of the automatic stay of section 362(a) of the Bankruptcy Code to permit JPMC to exercise its rights and remedies under state law with respect to the Account and the PPP Note, and Debtor has also agreed to waive the 14-day stay prescribed under Bankruptcy Rule 4001(a)(3). Debtor further consents to this Court's denial of the PPP Motion as moot.

**III.    NOTICE**

JPMC serves this Motion on the Debtors, their counsel of record, and all other parties who have filed a notice of appearance and request for notice in this case. In addition, JPMC has provided notice to the SBA.

**IV.    CONCLUSION**

For all the foregoing reasons, JPMC respectfully requests entry of an order granting the Motion and approving the Stipulation.

DATED: August 11, 2020                    BUCHALTER
                                          A Professional Corporation


                                          By:   */s/ Valerie Bantner Peo*
                                          VALERIE BANTNER PEO
                                          Attorneys for Creditor
                                          JPMorgan Chase Bank, N.A.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

# EXHIBIT 1

BUCHALTER, A Professional Corporation
VALERIE BANTNER PEO (SBN: 260430)
55 Second Street, Suite 1700
San Francisco, CA  94105-3493
Telephone: (415) 227-0900
Fax: (415) 227-0770
Email:  vbantnerpeo@buchalter.com

Attorneys for Creditor
JPMORGAN CHASE BANK N.A.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re | Bankruptcy Case No. 19-41283 (WJL) |
| JADOOTV, INC. | Chapter 11 |
| Debtor. | R.S. No. BN-001 |
| | **STIPULATION FOR RELIEF FROM THE AUTOMATIC STAY** |

This *Stipulation for Relief from the Automatic Stay* ("**Stipulation**") is entered by and between JPMorgan Chase Bank, N.A. ("**JPMC**") and JadooTV, Inc. ("**Debtor**" and, together with JPMC, the "**Parties**"), with reference to the following facts:

## RECITALS

**The Bankruptcy Case**.

A.      On May 31, 2019, the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code.

B.      The Debtor continues to operate its business as a debtor in possession. No trustee or statutory committee of creditors has been appointed.

**The Paycheck Protection Program Loan**.

C.      In response to the negative economic impact of the coronavirus global pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("**CARES Act**").

Pub. L. No. 116-136, 134 Stat. 281 (2020). Among other things, the CARES Act created the Paycheck Protection Program ("**PPP**"), a new government-guaranteed loan program administered by the Small Business Administration ("**SBA**"), which is designed to help businesses keep their workforce employed during the global health crisis. 15 U.S.C. §636(a)(36).

D.     To facilitate the expeditious administration of the PPP loan program, the SBA issued a series of interim final rules, which among other things, provide that debtors in bankruptcy are ineligible for PPP loans. 85 Fed. Reg. 23450, 23451 § III.4. The SBA's interim final rules also provide that the lender's underwriting for PPP loans is limited to confirming receipt of the borrower's PPP certification, verifying that the payroll information provided by the borrower is mathematically correct and following certain requirements of the Bank Secrecy Act (codified at 31 U.S.C. § 5311). 85 Fed. Reg. 20811, § III.3.b.

H.     On or about April 7, 2020, the Debtor submitted to JPMC a PPP Lender Application Form (the "**PPP Application**"). JMPC contends that the PPP Application represented that Debtor was not "presently involved in any bankruptcy." A copy of the PPP Application is attached hereto as **Exhibit A**.

I.     JPMC approved the PPP Application. On May 1, 2020, JPMC funded the PPP loan in the amount of $224,460.00 (the "**PPP Funds**") pursuant to a Note (the "**PPP Note**"). The PPP Funds were deposited in the Debtor's deposit account maintained by JPMC (the "**Account**"). A copy of the PPP Note is attached hereto as **Exhibit B**.

J.     JPMC contends that after it funded the PPP loan to the Debtor, JPMC discovered that the Debtor was a debtor in bankruptcy and therefore JPMC asserts that the PPP Application contained a false representation.

K.     JPMC contends that a false representation made in the PPP Application is an event of default under the PPP Note. Upon a default, JPMC asserts that it may accelerate the balance due under the PPP Note.

L.     JMPC contends that the Deposit Account Agreement which governs the Account (the "**Account Agreement**") gives JPMC both the right to offset amounts owed to JPMC (§ VI.E), and the right to freeze the Account to avoid a risk of loss to JPMC (§ IX.C). A copy of the

Account Agreement is attached hereto as **Exhibit C**.

M.     On or about June 4, 2020, JPMC placed an administrative hold on the Account in the amount of the PPP Funds.

**The Present Dispute**.

N.     On June 20, 2020, the Debtor filed its *Motion of Debtor for an Order Authorizing Incurrence of Unsecured Debt in the Form of Paycheck Protection Program Loan Pursuant to 11 U.S.C. §§ 364(b) and 105(a) Nunc Pro Tunc to April 7, 2020* [Dkt. No. 271] (the "**PPP Motion**"). By the PPP Motion, the Debtor sought *nunc pro tunc* authority to obtain post-petition financing in the form of the PPP Note. The Debtor also contends in the PPP Motion that the administrative hold JPMC placed on the Account violates the automatic bankruptcy stay of 11 U.S.C. § 362(a).

O.     JPMC contends that an administrative hold on a deposit account to preserve setoff rights does not violate the automatic stay under the holding of *Citizens Bank. v. Strumpf*, 516 US 16, 21 (1995).

P.     On June 26, 2020, the Court *sua sponte* entered its *Order Setting Status Conference* [Dkt. No. 280] which suspended the deadline to respond to the PPP Motion and scheduled a status conference for July 10, 2020. The July 10, 2020 status conference was continued to July 22, 2020.

Q.     At the July 22, 2020 status conference, the Court orally approved a briefing schedule for JPMC's anticipated motion for relief from the automatic stay to effectuate offset and continued the status conference to July 29, 2020.

R.     At the July 29, 2020 status conference, the Parties reported to the Court that they had settled their dispute in principle, and the Court took the status conference off its calendar.

S.     As of the date of this Stipulation, JPMC asserts that the default under the PPP Note totals $224,460.00, i.e., the amount of the PPP Funds.

T.     The Parties have engaged in settlement discussions and have decided to resolve this matter to avoid the risk, cost and uncertainty associated with litigating competing motions.

**NOW THEREFORE**, based upon the foregoing Recitals, and for good and valuable

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

consideration, the receipt and sufficiency of which the Parties hereby acknowledge, the Parties, intending to be bound legally by the terms and conditions of this Stipulation, by and through their respective attorneys of record, hereby stipulate and agree as follows:

## **STIPULATION**

1.     Recitals.  The foregoing recitals are incorporated herein by reference and the Parties stipulate that all statements made therein are true and correct and are a material term of this Stipulation.

2.     PPP Motion. Upon the entry of a Court order approving the terms of this Stipulation, the PPP Motion will be deemed withdrawn and the Parties consent to entry of an order denying the PPP Motion as moot.

3.     Relief from The Automatic Stay. Upon the entry of a Court order approving the terms of this Stipulation, the automatic stay under 11 U.S.C. § 362(a) will be lifted to allow JPMC to exercise all of its rights and remedies under the Account Agreement, the PPP Note and applicable law, including the right to offset $224,460.00 from the Account.

4.     No Stay of Effectiveness. The fourteen-day stay prescribed under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure shall be waived.

5.     No Waiver of Rights.  Except as expressly set forth herein, this Stipulation shall not affect the rights, remedies, claims or defenses of JPMC or the Debtor, all of which shall be preserved.

6.     Authority. Each party hereby represents and warrants that the person signing below has the authority to bind such party to this Stipulation.

7.     Execution in Counterparts.  This Stipulation may be executed in one or more counterparts and by facsimile, all of which shall be deemed to be a single original.

///

///

///

///

///

1      8.     <u>Entire Understanding</u>. This Stipulation sets forth the entire understanding of the

2 Parties with respect to the within matters and cannot be modified except in writing and signed by

3 both Parties.

4 DATED: August 11, 2020       **BUCHALTER**, A Professional Corporation

5

6                            By:   /s/ Valerie Bantner vPeo

7                              VALERIE BANTNER PEO
                             Attorneys for JPMorgan Chase Bank, N.A.

8

9 DATED: August 11, 2020       **KELLER BENVENUTTI KIM, LLP**

10

11                            By:   /s/ Jane Kim

12                              JANE KIM
                             Attorneys for Debtor JadooTV, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 41375447v1
5

# Exhibit A

Close   Print

**Paycheck Protection Program**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

**Lender Application Form - Paycheck Protection Program Loan Guaranty**

The purpose of this form is to collect identifying information about the Lender, the Applicant, the loan guaranty request, sources and uses of funds, the proposed structure (which includes pricing and the loan term), and compliance with SBA Loan Program Requirements. This form reflects the data fields that will be collected electronically from lenders; no paper version of this form is required or permitted to be submitted. As used in this application, "Paycheck Protection Program Rule" refers to the rules in effect at the time you submit this application that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act).

<u>Instructions for Lenders</u>
All Paycheck Protection Program (PPP) loans are processed by all Lenders under delegated authority from SBA. This application must be submitted and signed electronically in accordance with program requirements, and the information requested is to be retained in the Lender's loan file.

### A. Lender Information

| | |
|---|---|
| Lender Name: JPMorgan Chase Bank, National Association | Lender Location ID:194093 |
| Address: 1111 Polaris Parkway    City: Columbus | St: OH    Zip: 43240 |
| Lender Contact: Deb Steuber | Ph: 602-221-2501  Cell or Ext: |
| Contact Email: Unmonitored.PPP.Mailbox@jpmchase.com | Title: Authorized Representative |

### B. Applicant Information

Entity Type: Corp. Sub Chapter C

Applicant Legal Name: JADOO TV, INC.

| | |
|---|---|
| DBA: JADOO TV, INC. | Business Tax ID: XXXXX3775 |
| Applicant Address: 5880 W LAS POSITAS BLVD STE 37 | City, State, Zip: PLEASANTON,CA,94588 |
| Applicant Primary Contact: SADIA SOHAIL | Phone: ▮▮▮▮1935 |

### C. Loan Structure Information

| Amount of Loan Request: | $224,460.00 | Guarantee %: | 100% | Loan Term in # of Months: | 24 | Payment: | Deferred 6 mos. |
|---|---|---|---|---|---|---|---|

Applicant must provide documentation to Lender supporting how the loan amount was calculated in accordance with the Paycheck Protection Program Rule and the CARES Act, and Lender must retain all such supporting documentation in Lender's file.

| Interest Rate: | 1% | |
|---|---|---|

### D. Loan Amount Information

| | |
|---|---|
| Average Monthly Payroll Multiplied by 2.5 | $ 224,460.00 |
| | $ 0.00 |

| D. Loan Amount Information | |
|---|---|
| Refinance of Eligible Economic Injury Disaster Loan, net of Advance (if Applicable; see Paycheck Protection Program Rule) | |
| **Total** | $ 224,460.00 |

### E. General Eligibility *(If the answer is no to either, the loan cannot be approved)*

- The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020 and had employees for whom the Applicant paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant, (3) the funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, and (4) the Applicant has not received another Paycheck Protection Program loan. ☑ ☐ Yes No

- The Applicant has certified to the Lender that it (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, meets the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry. ☑ ☐ Yes No

### F. Applicant Certification of Eligibility *(If not true, the loan cannot be approved)*

- The Applicant has certified to the Lender that the Applicant is eligible under the Paycheck Protection Program Rule. ☑ True

### G. Franchise/License/Jobber/Membership or Similar Agreement (If applicable and no, the loan cannot be approved)

- The Applicant has represented to the Lender that it is a franchise that is listed in the SBA's Franchise Directory. ☐ ☐ Yes No

### H. Character Determination *(If no, the loan cannot be approved)*

- The Applicant has represented to the Lender that neither the Applicant (if an individual) nor any individual owning 20% or more of the equity of the Applicant is subject to an indictment, criminal information, arraignment, or other mean by which format criminal charges are brought in any jurisdiction, or is presently incarcerated, or on probation or parole. ☑ ☐ Yes No

- The Applicant has represented to the Lender that neither the Applicant (if an individual) nor any individual owning 20% or more of the equity of the Applicant has within the last 5 years, for any felony: 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment). ☑ ☐ Yes No

### I. Prior Loss to Government/Delinquent Federal Debt *(If no, the loan cannot be approved)*

- The Applicant has certified to the Lender that neither the Applicant nor any owner (as defined in the Applicant's SBA Form 2483) is presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy. ☑ ☐ Yes No

https://str-blue.apps.prod.na-3h.gaia.jpmchase.net/STR/apstar/applicationverification/SBA...   6/11/2020

| **I. Prior Loss to Government/Delinquent Federal Debt** *(If no, the loan cannot be approved)* | | |
|---|---|---|
| • The Applicant has certified to the Lender that neither the Applicant nor any of its owners, nor any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government. | ☑ Yes | ☐ No |

| **J. U.S. Employees** *(If no, the loan cannot be approved)* | | |
|---|---|---|
| • The Applicant has certified that the principal place of residence for all employees included in the Applicant's payroll calculation is the United States. | ☑ Yes | ☐ No |

| **K. Fees** *(If yes, Lender may not pass any agent fee through to the Applicant of offset or pay the fee with the proceeds of this loan)* | | |
|---|---|---|
| • Is the Lender using a third party to assist in the preparation of the loan application or application materials, or to perform other services in connection with this loan? | ☐ Yes | ☑ No |

### SBA Certification to Financial Institution under Right to Financial Privacy Act (12 U.S.C.3401)

By signing SBA Form 2483, Borrower Information Form in connection with this application for an SBA-guaranteed loan, the Applicant certifies that it has read the Statements Required by Law and Executive Orders, which is attached to Form 2483. As such, SBA certifies that it has complied with the applicable provisions of the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401) and, pursuant to that Act, no further certification is required for subsequent access by SBA to financial records of the Applicant/Borrower during the term of the loan guaranty.

### Lender Certification

- On behalf of the Lender, I certify that:
  - The Lender has complied with the applicable lender obligations set forth in paragraphs 3.b(i)-(iii) of the Paycheck Protection Program Rule.
  - The Lender has obtained and reviewed the required application (including documents demonstrating qualifying payroll amounts) of the Applicant and will retain copies of such documents in the Applicant's loan file.
- I certify that:
  - Neither the undersigned Authorized Lender Official, nor such individual's spouse or children, has a financial interest in the Applicant.

Authorized Lender Official: Smith, Roger      Date: 04/22/2020

       Signature

Type or Print Name: Smith, Roger      Title: Authorized Signer

NOTE: According to the Paperwork Reduction Act, you are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated burden for completing this form, including time for reviewing instructions, gathering data needed, and completing and reviewing the form is 25 minutes per response. Comments or questions on the burden estimates should be sent to U.S. Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office

of Management and Budget, New Executive Office Building, Rm. 10202, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

Close    Print

# Exhibit B



# Note

|       |                |
|------:|:---------------|
| Date: | Apr 7, 2020 |
| Note Amount: | $224,460 |
| Borrower: | JADOO TV, INC. |
| Lender: | JPMorgan Chase Bank, N.A. |

1. **PROMISE TO PAY.**

   Borrower promises to pay to the order of Lender the Note Amount, plus interest on the unpaid principal balance at the Note Rate, and all other amounts required by this Note.

2. **DEFINITIONS.**

   "CARES Act" means the Coronavirus Aid, Relief, and Economic Security Act.

   "Deferral Period" means the six month period beginning on the date of this Note.

   "Loan" means the loan evidenced by this Note.

   "Maturity Date" means twenty-four (24) months from the date of this Note.

   "Note Rate" means an interest rate of 0.98% Per Annum and interest shall accrue on the unpaid principal balance computed on the basis of the actual number of days elapsed in a year of 360 days.

   "Per Annum" means for a year deemed to be comprised of 360 days.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

3. **PAYMENT TERMS.**

   Borrower will pay this Note as follows:

   1. No Payments During Deferral Period. There shall be no payments due by Borrower during the Deferral Period.

   2. Principal and Interest Payments. Commencing one month after the expiration of the Deferral Period, and continuing on the same day of each month thereafter until the Maturity Date, Borrower shall pay to Lender monthly payments of principal and interest, each in such equal amount required to fully amortize the principal amount outstanding on the Note on the last day of the Deferral Period by the Maturity Date.

   3. Maturity Date. On the Maturity Date, Borrower shall pay to Lender any and all unpaid principal plus accrued and unpaid interest plus interest accrued during the Deferral Period. This Note will mature on the Maturity Date.

   4. If any payment is due on a date for which there is no numerical equivalent in a particular calendar month then it shall be due on the last day of such month. If any payment is due on a day that is not a Business Day, the payment will be made on the next Business Day. The term "Business Day" means a day other than a Saturday, Sunday or any other day on which national banking associations are authorized to be closed.

5. Payments shall be allocated among principal and interest at the discretion of Lender unless otherwise agreed or required by applicable law. Notwithstanding, in the event the Loan, or any portion thereof, is forgiven pursuant to the Paycheck Protection Program under the federal CARES Act, the amount so forgiven shall be applied to principal.

6. Borrower may prepay this Note at any time without payment of any premium.

## 4. CERTIFICATIONS.

Borrower certifies as follows:

1. Current economic uncertainty makes this Loan necessary to support the ongoing operations of Borrower.

2. Loan funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments.

3. During the period beginning on February 15, 2020 and ending on December 31, 2020, Borrower has not and will not receive another loan under this program.

4. Borrower was in operation on February 15, 2020 and (i) had employees for whom it paid salaries and payroll taxes, or (ii) paid independent contractors as reported on a 1099-Misc.

## 5. AGREEMENTS.

Borrower understands and agrees, and waives and releases Lender, as follows:

1. The Loan would be made under the SBA's Paycheck Protection Program. Accordingly, it must be submitted to and approved by the SBA. There is limited funding available under the Paycheck Protection Program and so all applications submitted will not be approved by the SBA.

2. Lender is participating in the Payroll Protection Program to help businesses impacted by the economic impact from COVID 19. However, Lender anticipates high volume and there may be processing delays and system failures along with other issues that interfere with submission of your application to SBA. Lender does not represent or guarantee that it will submit the application before SBA funding is no longer available or at all. You agree that Lender is not responsible or liable to you (i) if the application is not submitted to the SBA until after SBA stops approving applications, for any reason or (ii) if the application is not processed. You forever release and waive any claims against Lender concerning failure to obtain the Loan. This release and waiver applies to but is not limited to any claims concerning Lender's (i) pace, manner or systems for processing or prioritizing applications, or (ii) representations by Lender regarding the application process, the Paycheck Protection Program, or availability of funding. This agreed to release and waiver supersedes any prior communications, understandings, agreements or communications on the issues set forth herein.

3. Forgiveness of the Loan is only available for principal that is used for the limited purposes that qualify for forgiveness under SBA requirements, and that to obtain forgiveness, Borrower must request it and must provide documentation in accordance with the SBA requirements, and certify that the amounts Borrower is requesting to be forgiven qualify under those requirements. Borrower also understand that Borrower shall remain responsible under the Loan for any amounts not forgiven, and that interest payable under the Loan will not be forgiven but that the SBA may pay the Loan interest on forgiven amounts.

4. Forgiveness is not automatic and Borrower must request it. Borrower is not relying on Lender for its understanding of the requirements for forgiveness such as eligible expenditures, necessary records/documentation, or possible reductions due to changes in number of employees or compensation. Rather Borrower will consult the SBA's program materials.

5. The application for this Loan is subject to review and that Borrower may not receive the Loan. The Loan also remains subject to availability of funds under the SBA's Payment Protection Program and to the SBA issuing an

SBA loan number.

## 6. DEFAULT.

Borrower is in default under this Note if Borrower:

1. Fails to make a payment when due under the Note or otherwise fails to comply with any provision of this Note.

2. Does not disclose, or anyone acting on its behalf does not disclose, any material fact to Lender or SBA.

3. Makes, or anyone acting on its behalf makes, a materially false or misleading representation, attestation or certification to Lender or SBA in connection with Borrower's request for this Loan under the CARES Act, or makes a false certification under paragraph 5 of this Note.

4. Fails to comply with all of the provisions of this Note.

5. Becomes the subject of a proceeding under any bankruptcy or insolvency law, has a receiver or liquidator appointed for any part of its business or property, or makes an assignment for the benefit of creditors.

6. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent.

7. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

## 7. LENDER'S RIGHTS IF THERE IS A DEFAULT.

Without notice or demand and without giving up any of its rights, Lender may:

1. Require immediate payment of all amounts owing under this Note.

2. Collect all amounts owing from the Borrower.

3. File suit and obtain judgment.

## 8. LENDER'S GENERAL POWERS.

Without notice or Borrower's consent, Lender may incur expenses to collect amounts due under this Note and enforce the terms of this Note. Among other things, the expenses may include reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

## 9. GOVERNING LAW AND VENUE; WHEN FEDERAL LAW APPLIES.

When SBA is the holder, this Note shall be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

If the SBA is not the holder, this Note shall be governed by and construed in accordance with the laws of the State of Ohio where the main office of Lender is located. MATTERS REGARDING INTEREST TO BE CHARGED BY LENDER AND THE EXPORTATION OF INTEREST SHALL BE GOVERNED BY FEDERAL LAW (INCLUDING WITHOUT LIMITATION 12 U.S.C. SECTIONS 85 AND 1831u) AND THE LAW OF THE STATE OF OHIO. Borrower agrees that any legal action or proceeding with respect to any of its obligations under this Note may be brought by Lender in any state or federal court located in the State of Ohio, as Lender in its sole discretion may elect. Borrower submits to and accepts in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of those courts. Borrower waives any claim

that the State of Ohio is not a convenient forum or the proper venue for any such suit, action or proceeding. The extension of credit that is the subject of this Note is being made by Lender in Ohio.

10. **SUCCESSORS AND ASSIGNS.**

Under this Note, Borrower includes its successors, and Lender includes its successors and assigns.

11. **GENERAL PROVISIONS.**

1. Borrower must sign all documents necessary at any time to comply with the Loan.

2. Borrower's execution of this Note has been duly authorized by all necessary actions of its governing body. The person signing this Note is duly authorized to do so on behalf of Borrower.

3. This Note shall not be governed by any existing or future credit agreement or loan agreement with Lender. The liabilities guaranteed pursuant to any existing or future guaranty in favor of Lender shall not include this Note. The liabilities secured by any existing or future security instrument in favor Lender shall not include this Note.

4. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

5. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

6. If any part of this Note is unenforceable, all other parts remain in effect.

7. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor.

8. Borrower's liability under this Note will continue with respect to any amounts SBA may pay Bank based on an SBA guarantee of this Note. Any agreement with Bank under which SBA may guarantee this Note does not create any third party rights or benefits for Borrower and, if SBA pays Bank under such an agreement, SBA or Bank may then seek recovery from Borrower of amounts paid by SBA.

9. Lender reserves the right to modify the Note Amount based on documentation received from Borrower.

12. **ELECTRONIC SIGNATURES.**

Borrower's electronic signature shall have the same force and effect as an original signature and shall be deemed (i) to be "written" or "in writing" or an "electronic record", (ii) to have been signed and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files. Such paper copies or "printouts," if introduced as evidence in any judicial, arbitral, mediation or administrative proceeding, will be admissible as between the parties to the same extent and under the same conditions as other original business records created and maintained in documentary form.

# Exhibit C

# DEPOSIT ACCOUNT AGREEMENT AND PRIVACY NOTICE



## Welcome to Chase

Thank you for opening your account with Chase; we look forward to serving you. We recommend keeping this agreement but we regularly update it, so you can always get the current agreement at chase.com, a branch or by request when you call us.

This is your Deposit Account Agreement (may also be referred to as Account Rules and Regulations), or contract, with us.

The Deposit Account Agreement also includes these separate documents that pertain to our personal and business accounts:

- Rates for interest-bearing accounts
- Personal accounts:
  - Consumer Banking Products: Additional Banking Services and Fees (including our Fee Schedule)
  - Chase Private Client Products: Deposit Products and Services
- Business accounts:
  - Additional Banking Services and Fees (including our Fee Schedule)
- Any additional disclosures, such as amendments or agreements, that we provide to you either when you open your account or when we change the terms of your account.

## How to Contact Us

We're here for you. See below for how to reach us.

**Personal Accounts:**

| | |
|---|---|
| Main phone number: | 1-800-935-9935 |
| Spanish: | 1-877-312-4273 |
| International calls: | 1-713-262-1679 |
| Website: | chase.com |

**Business Accounts:**

| | |
|---|---|
| Main phone number: | 1-800-242-7338 |
| Spanish: | 1-888-622-4273 |
| International calls: | 1-713-262-1679 |
| Website: | chase.com/business |

**Chase Private Client:**

| | |
|---|---|
| Main phone number: | 1-888-994-5626 |
| International calls: | 1-405-235-4847 |
| Website: | chase.com/privateclient |

**Chase Mobile or Online Banking:** 1-877-242-7372

**Deaf and Hard of Hearing:** We accept operator relay calls

**Electronic Funds Transfers (EFTs):**

In case of errors or questions about your EFTs, or if you believe your debit card has been lost or stolen, call us at 1-866-564-2262 or write:

Chase
PO Box 659809
Internal Mail TX3-7849
San Antonio, TX 78265-9109

**To Dispute Information Reported to a Consumer Reporting Agency:**

JPMorgan Chase Bank, N.A.
PO Box 182108
Internal Mail OHW-1000
Columbus, OH 43218

**All Other Written Correspondence:**

JPMorgan Chase Bank, N.A.
PO Box 659754
San Antonio, TX 78265-9754

Case: 19-41283    Doc# 298    Filed: 08/11/20    Entered: 08/11/20 14:31:36    Page 22 of 51

# *Deposit Account Agreement Table of Contents*

**I. Definitions** ...................................................................................................................................................................5

**II. Opening Your Account** ...........................................................................................................................................5

  **A.** Personal Accounts ...............................................................................................................................................5

    **1.** Solely owned account ......................................................................................................................................5

    **2.** Joint accounts ...................................................................................................................................................5

    **3.** "Payable on death" account ............................................................................................................................6

    **4.** "In trust for" (informal trust) account ............................................................................................................6

    **5.** Convenience account ........................................................................................................................................6

    **6.** Power of attorney .............................................................................................................................................6

    **7.** Uniform Transfers to Minors Act/Uniform Gifts to Minors Act account ......................................................6

    **8.** Representative payee/VA custodian account ..................................................................................................6

    **9.** Other fiduciary accounts ..................................................................................................................................7

  **B.** Business Accounts ...............................................................................................................................................7

**III. Using Your Checking or Savings Account** ...........................................................................................................7

  **A.** Adding Money to Your Account ..........................................................................................................................7

    **1.** Direct deposits; notice of electronic deposits ...............................................................................................7

    **2.** Endorsements ...................................................................................................................................................7

    **3.** Endorsement requirements .............................................................................................................................7

    **4.** Our right to refuse deposits ............................................................................................................................7

    **5.** Our right to charge back deposited or cashed items .....................................................................................7

    **6.** Deposit records and receipts ..........................................................................................................................7

    **7.** Night depository and large cash deposits ......................................................................................................8

    **8.** Our responsibility for collecting deposits ......................................................................................................8

    **9.** Depositing remotely created checks ...............................................................................................................8

  **B.** Overdrafts and Fees; Overdraft Protection; Posting Order ...............................................................................8

    **1.** Posting order ....................................................................................................................................................8

    **2.** Overdrafts .........................................................................................................................................................8

    **3.** Your responsibility to repay overdrafts ..........................................................................................................8

    **4.** Insufficient Funds and Returned Item fees ....................................................................................................8

    **5.** Overdraft Protection ........................................................................................................................................8

  **C.** Electronic Funds Transfer Service Terms; Payments, Deposits and Transfers You Make or Receive by Electronic Methods .................................................................................................................................................9

    **1.** Types of EFT services.........................................................................................................................................9

      **a.** Debit and ATM cards ....................................................................................................................................9

      **b.** Electronic transfers using your account number ......................................................................................10

      **c.** Online banking and Chase Mobile .............................................................................................................10

      **d.** Telephone banking .......................................................................................................................................10

      **e.** Transfers for Overdraft Protection ............................................................................................................10

    **2.** Important information and agreements about your card ...............................................................................10

      **a.** Authorizations and holds ............................................................................................................................10

      **b.** Overdrafts with your card ...........................................................................................................................10

      **c.** Canceling your card ......................................................................................................................................10

      **d.** Our right to refuse transactions .................................................................................................................10

      **e.** Foreign exchange transactions...................................................................................................................10

      **f.** Debit or credit prompts at terminals .........................................................................................................11

      **g.** ATM safety and safeguarding your account information ..........................................................................11

Case 19-44208   Doc# 298   Filed: 08/11/20   Entered: 08/11/20 14:31:36   Page 23 of
51

**3.** Limitations on transfers, amounts, and frequency of transactions ........................................ 11
**4.** Receipts and statements ........................................................................................................ 11
**5.** In case of errors or questions about your electronic funds transfers ................................... 11
**6.** Our liability for failure to complete transactions ................................................................... 12
**7.** Preauthorized (recurring) transfers and stop payments ....................................................... 12
**8.** Disclosure of account information to third parties ................................................................. 12
**9.** Notice of your rights and liabilities ......................................................................................... 12
**10.** Fees ...................................................................................................................................... 13
**11.** Services not covered by this part; separate agreements ..................................................... 13

**D.** Other Ways to Use Your Money ................................................................................................ 13
**1.** When you can withdraw funds you've deposited ................................................................... 13
**2.** Withdrawals and transfers from your account ....................................................................... 13
**3.** Autosave feature .................................................................................................................... 13
**4.** Transactions in a foreign currency ........................................................................................ 13
**5.** Large cash withdrawals ......................................................................................................... 14
**6.** Stop payments on a check ..................................................................................................... 14
**7.** Account numbers on funds transfers ..................................................................................... 14
**8.** Limits on savings account withdrawals ................................................................................. 14
**9.** Our right to require advance notice of withdrawals ............................................................... 14
**10.** Check cashing ...................................................................................................................... 14
**11.** Incomplete, future-dated, conditional or stale-dated checks .............................................. 14
**12.** Multiple signatures ............................................................................................................... 14
**13.** Facsimile signatures ............................................................................................................ 15
**14.** Review of checks and signatures ......................................................................................... 15
**15.** Notice that a check has been deposited or cashed ............................................................. 15
**16.** Substitute Checks and Your Rights ..................................................................................... 15

**IV. Funds Availability Policy** ........................................................................................................ 15

**V. Safeguarding Your Information** ................................................................................................ 17
**A.** Checks and Other Documents You Use ................................................................................... 17
**B.** Protecting Your Checks ............................................................................................................ 17
**C.** Notice of Errors, Forgeries and Unauthorized Signatures ...................................................... 17

**VI. Managing and Maintaining Your Account** ............................................................................. 17
**A.** Interest on Checking and Savings Accounts ............................................................................ 17
**B.** Linking Your Accounts; Statements ......................................................................................... 17
**1.** Linked accounts ..................................................................................................................... 17
**2.** Statements and notices ......................................................................................................... 18
**3.** Combined statements ............................................................................................................ 18
**4.** Options for receiving checks .................................................................................................. 18
**C.** Telephone and Electronic Communication ............................................................................... 18
**D.** Other Fees for Your Account .................................................................................................... 18
**1.** Fees ....................................................................................................................................... 18
**2.** Savings Withdrawal Limit Fee ............................................................................................... 18
**E.** Setoff and Security Interest ...................................................................................................... 18
**F.** Account Alerts and Text Banking .............................................................................................. 19

**VII. Maintaining Your Certificate of Deposit (CD) Account** ........................................................ 19

Case 19-44292    Doc# 298    Filed: 08/11/20    Entered: 08/11/20 14:31:36    Page 24 of
51

**VIII. Closing Your Account** ........................................................................... **20**

**IX. Other Legal Terms** ................................................................................... **20**

    **A.** Rules Governing Your Account ................................................................. 20

    **B.** General Liability ........................................................................................ 20

    **C.** Restricting Your Account; Blocking or Delaying Transactions .................. 21

    **D.** Changes to the Agreement ...................................................................... 21

    **E.** Our Responsibility to Obtain Personal Information ................................... 21

    **F.** Prohibited Activities and Tax Reporting ................................................... 21

    **G.** Death or Incompetence of Account Owner or Sole Signer ...................... 22

    **H.** Adverse Claims ........................................................................................ 22

    **I.** Authorization to Share Information ........................................................... 22

    **J.** Disputing Information Reported to a Consumer Reporting Agency ........... 22

    **K.** Legal Process and Requests for Information ........................................... 22

    **L.** Abandoned Property ................................................................................ 22

    **M.** English Language — Other Language Preferences ................................. 22

    **N.** Referrals ................................................................................................... 22

    **O.** Special Provisions for Pass-Through Accounts ....................................... 22

    **P.** Sub-accounts ........................................................................................... 23

    **Q.** Permitted Time for Filing a Lawsuit ........................................................ 23

    **R.** Location of Legal Proceedings ................................................................ 23

    **S.** Pre-judgment Interest Rate ..................................................................... 23

    **T.** Assignment of Agreement and Successors ............................................. 23

    **U.** No Waiver ................................................................................................. 23

**X. Arbitration; Resolving Disputes** .................................................................. **23**

# *Privacy Notice*

Case 19-44263    Doc# 298    Filed: 08/11/20    Entered: 08/11/20 14:31:36    Page 25 of 51

# Deposit Account Agreement

This agreement is the contract that governs your account.

Whether you have a personal or business deposit account, this document is the basic agreement between you and us (JPMorgan Chase Bank, N.A. or "Chase"). By signing a signature card or submitting an account application, or by using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms in this agreement. Customers of some of our business groups, such as Corporate Banking, will get a different agreement and their accounts will be governed by that agreement, not this one. If you have a product that is not a deposit account, such as a prepaid card or credit card, this agreement does not apply to that product. Also, other products or services, such as online banking or retirement accounts, may have additional agreements. A more specific agreement takes precedence over this one.

This agreement also refers to and includes other disclosures we may provide to you, including (1) product information, (2) rate information, (3) banking services and fees, and (4) other disclosures, agreements, and amendments that we may provide to you. All may contain information on fees that apply to your accounts. Products and services as well as associated fees, charges, interest rates and balance requirements may differ among different geographic locations. Not all products and services, including check cashing, are offered at all locations.

# I. Definitions

Here are some important terms that we use throughout this agreement:

**Account:** Any deposit account, such as a checking or savings account, you have with us that is covered by this agreement.

**ACH (Automated Clearing House):** ACH, which may also be referred to as automatic payments, are funds transferred to or from your account through an automated clearing house network. Common examples include direct deposits of payroll, pension or government benefits such as Social Security.

**ATM (Automated Teller Machine):** An electronic device that performs many banking services, which can include withdrawals and balance inquiries.

**Available balance:** Your previous day's balance plus any pending credit transactions (excluding pending debit card purchase returns), such as ACH direct deposits minus:

- Pending charges such as debit card purchases, electronic payments, checks drawn on your account that have been cashed or deposited, or transactions that we are obligated to pay or have already paid,
- Amount of deposits that are not yet available for withdrawal under our Funds Availability Policy,
- Any holds on your balance, such as holds on funds to comply with court orders or other legal requirements.

**Business day:** Every day except Saturdays, Sundays and federal holidays. Some branches may close on a business day due to an emergency or to observe a state holiday.

**Check:** A written order to pay a specific amount of money drawn on, payable through, payable at or processed by a bank or other depository institution. If a check is sent or returned as an electronic image or as a substitute check, it is still considered a check.

**Debit card transaction:** Any purchase or bill payment using your debit card. A debit card transaction may be either an everyday (not recurring) purchase transaction or a recurring payment, such as a monthly bill.

**Direct deposit:** An automatic electronic deposit made through the ACH network to your account by someone else, such as an employer issuing payroll or a government paying benefits.

**Hold on your account:** Any amount of money that is in your balance but that you cannot withdraw because of delayed funds availability, a court order or other reason. A hold may be placed for more than your balance.

**Item:** Any check, ACH, funds transfer, online banking transaction, wire transfer, teller cash withdrawal, ATM withdrawal, debit card purchase, fee, charge or other amount that is added to or subtracted from your balance.

**Overdraft:** The amount by which any item(s) presented on your account on a business day exceeds the available balance.

**Overdrawn:** When your account has a negative balance.

**PIN:** A four-digit personal identification number that you either select or request from us for your debit or ATM card. Some merchants and all ATMs require a PIN when you use a debit card.

# II. Opening Your Account

## A. Personal Accounts

THE TYPE OF ACCOUNT OWNERSHIP MAY DETERMINE HOW YOUR FUNDS ARE PAID IF YOU DIE, EVEN IF YOUR WILL STATES OTHERWISE. PLEASE CONSULT YOUR ESTATE PLANNING ADVISOR OR ATTORNEY ABOUT YOUR CHOICES.

If your account is a type listed under "Personal Accounts" in our product information, you agree not to use it for business purposes. Ownership of your account is determined by the most current signature card. However, we are authorized to rely on the account ownership information contained in our deposit system unless we are notified that the most current signature card and the deposit system contain different information.

### 1. Solely owned account

When only one individual is listed as the owner of an account, we will treat the account as a solely owned account.

### 2. Joint accounts

When two or more people are listed as owners of a personal account, the account is a "joint account" and each owner is a "joint owner."

Each joint owner has compete control over all of the funds in the account.

If your joint account becomes overdrawn, each joint owner is liable for the full amount the account is overdrawn, regardless of who initiated or benefited from the item(s) that caused the overdraft.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.
Return to Table of Contents
Page 5 of 24
Effective 5/17/2020

Case 19-44208    Doc# 298    Filed: 08/11/20    Entered: 08/11/20 14:31:36    Page 26 of
51

If one joint owner requests that we not pay items authorized by a different joint owner, we may block the account, but we are not required to do so. That means we will refuse to pay all items, including items authorized by the owner making the request. If we block the account, we may not release the block unless all joint owners agree in writing to remove it. No request to block the account will affect items that we paid before the request. If we decide not to block the account, all joint owners remain responsible for items subtracted from the account.

Any joint owner may close the account without the consent from any other joint owners. We may choose whether or not to act upon other instructions of any joint owners, including adding another owner to the account, without the authorization of the other joint owners. We may also pay all or any part of the funds in the joint account to a court or government agency if we receive a garnishment, levy or similar legal process that identifies any of the joint owners.

### Joint account with rights of survivorship

If a joint account has rights of survivorship, and one joint owner dies, the account ownership will be transferred to the surviving joint owners. The estate of the deceased owner will have no rights to the account. If there is more than one surviving joint owner, the account will continue as a joint account with rights of survivorship among the remaining owners. If an account is designated "JAWROS" or "JTWROS," it has rights of survivorship.

### Joint account with no right of survivorship (also called "tenants in common")

If a joint account does not have rights of survivorship, and one joint owner dies, that owner's interest passes to the owner's estate. Either the surviving joint owners or the deceased owner's estate may withdraw the funds at any time, and we have no responsibility for determining the respective interests of the owners. If an account is designated "Tenants in common" or "JTIC," it does not have rights of survivorship.

### When survivorship rights apply

Except as otherwise stated in this paragraph, a joint account has rights of survivorship unless you clearly indicate on the signature card and in the account title that the account is created without these rights. Accounts in Louisiana do not have rights of survivorship. Accounts in Texas do not have rights of survivorship unless you clearly indicate on the signature card and in the account title that the account is created with these rights.

If a joint account also contains a "payable on death" or "in trust for" designation, the account always includes a right of survivorship and is payable to the beneficiary only upon the death of the last surviving owner, except as stated in the paragraph below.

### Marital account (Wisconsin only)

If one owner of a marital account dies, the survivor is entitled to 50% of the account funds and the estate of the deceased is entitled to the other 50%. If a marital account contains a payable on death designation, the POD beneficiary is entitled to the deceased spouse's 50% share. However, we have no responsibility to determine the respective interests of the owner and the POD beneficiary.

### Tenants by the entirety (Florida only)

A Florida joint account owned solely by two spouses is a "tenants by the entirety" account unless the signature card indicates otherwise. We are not required to determine whether an account is a tenants by the entirety account before responding to a garnishment or other legal process. We may assert our right of setoff or security interest in a tenants by the entirety account in order to collect debts of either owner.

## 3. "Payable on death" account

If you establish your account payable on death to one or more beneficiaries, the account is a "POD" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designated. Multiple beneficiaries will be paid in equal shares unless the signature card provides otherwise. We do not offer POD accounts in all states.

## 4. "In trust for" (informal trust) account

If you establish your account as in trust for ("ITF") or as trustee for one or more beneficiaries without presenting formal trust documents, we may treat the account as an "ITF" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designated. Multiple beneficiaries will be paid in equal shares unless the signature card provides otherwise. We do not offer ITF accounts in all states.

## 5. Convenience account

If you have a convenience account, you are its sole owner, but you authorize an additional signer to write checks or authorize other items. You are solely responsible for the actions of the additional signer (grandfathered accounts only).

## 6. Power of attorney

A power of attorney is a document you sign that authorizes someone else, called the agent, to act on your behalf. If you sign a power of attorney, the agent can sign on your behalf and do anything you could do regarding the account, including withdrawing or spending all of the money in the account. Do not sign a power of attorney unless you trust the agent to act in your best interest. If you choose to add an agent, you must provide a power of attorney form that we agree to accept. We may rely on a copy of an original power of attorney. We are not required to investigate the facts relating to any power of attorney provided to us on your behalf, including whether your signature on the power of attorney is authentic or whether the agent continues to have authority. We may follow or refuse to follow the agent's instructions at any time, including if we suspect fraud or abuse on your account, unless state law requires otherwise. We may also refuse an agent's request to become a joint owner or a beneficiary of an account, but we have no liability to anyone if we do so. We have no liability when we follow or refuse to follow any instructions from an agent, for example, if your agent misuses the authority you have given them. An agent's power of attorney on an account is terminated when the account owner dies.

## 7. Uniform Transfers to Minors Act/Uniform Gifts to Minors Act account

If you are the custodian or successor custodian of an account under a state's Uniform Transfers/Gifts to Minors Act, you cannot pledge the account as collateral for a personal loan to you, or cash checks against it. You must transfer the funds in the account to the minor when the minor reaches the age of majority under the UTMA/UGMA law for the state where the UTMA was established.

## 8. Representative payee/VA custodian account

If you open an account as a "representative payee" for someone who receives Social Security payments, or as a legal custodian, spouse payee or other custodian for someone who receives Veterans Administration payments, you agree not to permit any deposits to the account other than the designated payments. We are not required to determine whether you deposit other funds or whether any withdrawals or transfers from the account are for the support of the person for whose benefit the funds are paid. This person is called the beneficiary. If the beneficiary dies, you must promptly notify us and stop all further deposits to and withdrawals from the

Return to Table of Contents

account. If the government demands that we return deposits made after the beneficiary's death and the account does not have enough funds to pay the demand, we may take the funds from any account you or the beneficiary owns.

### 9. Other fiduciary accounts
If you open an estate account, trust account, guardianship or conservatorship account, or other similar type of account, we reserve the right to require any documents we reasonably request to satisfy us that you are authorized to open and use the account, including withdrawing the funds. We do not have to permit any withdrawal from the account until we receive all requested documents. We have no fiduciary duties to you as the trustee, executor, guardian or conservator, or to the beneficial owners of the account.

## B. Business Accounts
If your account is a type listed under "Business Accounts" in our product information, you agree not to use it for personal purposes.

If our records list a business organization as the owner of an account, the account is payable to the business organization and not to any individual director, shareholder, member or partner. "Business organization" means a corporation, unincorporated association, limited liability company, partnership, or any other business, government or non-profit organization. We may rely on the accuracy and completeness of all resolutions, signature cards and other documents you deliver to us in connection with the account. If they state that a person is authorized to sign checks or otherwise initiate transactions on your account, that person is called a signer.

If the account owner is a sole proprietorship, that means that one person conducts the business as his or her own property, instead of through a business organization. A sole proprietor may also designate signers by appropriate documents. We may in some states allow a married couple to open an account as a sole proprietorship.

If you change your form of ownership or authorized signers, you must notify us when the change occurs.

A signer is authorized to endorse checks payable to the business. Endorsements "for deposit" may be written or stamped. A signer is also authorized to sign checks drawn against your account. We are authorized to pay checks without asking how the checks were issued or how the proceeds will be used, even if the check is payable to the person who signed the check.

A signer is authorized to instruct us to close accounts or do anything else involving any account, and to sign any agreements or documents relating to accounts or other business.

We may, although we are not required to, cash checks payable to or accept "less cash" deposits from a business organization.

If you open an attorney trust account, including an IOLTA or similar account, you authorize us to notify the appropriate state agency if the account is overdrawn or checks are dishonored, if the applicable state requires notice of those events.

# III. Using Your Checking or Savings Account

## A. Adding Money to Your Account

### 1. Direct deposits; notice of electronic deposits
When we receive an electronic deposit to your account, the only notice you will receive from us is on your next statement. You may visit chase.com or Chase Mobile® and use Account Alerts, or call us to confirm that we have received a deposit.

If the bank that sent an electronic deposit to your account tells us it was a mistake, or was intended for another customer or account, we may deduct the amount from your balance without investigating.

### 2. Endorsements
An endorsement is a signature, stamp or other mark made on a check to transfer the check to another person. If a check you deposited doesn't have your endorsement, we may endorse it for you or treat the check as if we had endorsed it. Either way, the effect will be as if you had endorsed the check. Also, any deposited check that appears to contain your stamped or facsimile endorsement will be treated as if you had actually endorsed it. We are not bound by any conditional or restrictive endorsements on a check you cash or deposit, or by any endorsement "without recourse."

### 3. Endorsement requirements
To help ensure that checks you deposit or cash will be processed timely, your endorsement (and any other endorsement supplied by a co-payee) must be in the 1½ inch area that starts on the right side as viewed from the back. Payee or customer information must not be on any other part of the back of the check.

If you don't endorse your check properly and it causes us a loss, cost or expense, you have to pay that amount to us.

### 4. Our right to refuse deposits
We may refuse a deposit, or part of a deposit, at any time. We also may refuse a deposit after initially accepting it. We can reverse any amount we have added to your balance for a deposited check and send the check on a collection basis even after we have taken physical possession of the check. We will not be liable to you for refusing a deposit, even if it causes us to decline any transactions you have already made. If we refuse a deposit, we may take a check on a "collection basis," which means we will not add funds to your balance until we have actually been paid for the check.

### 5. Our right to charge back deposited or cashed items
If you deposit or cash a check or other item and (1) the paying bank returns it to us unpaid; (2) the paying bank or the issuer of a check demands that we repay them because the check was altered, forged or unauthorized, is missing a signature or endorsement, or has a forged endorsement; or (3) the sending bank or the originator of an item demands that we return the item because it was unauthorized, sent to the wrong account number or procured by fraud, we may pay the return or demand, and subtract the funds from your balance in other accounts for which you are an owner, or charge part of the item to each, even if you have already withdrawn the funds. If we have reason to believe that any of the events in the previous sentence has occurred or may occur or that the check or other item should not have been paid or may not be paid for any other reason, we may place a hold on the funds or move them to a non-customer account until we determine who is entitled to them. If a deposited or cashed item is returned, we will charge you a Deposited Item Returned Fee or a Cashed Check Returned Fee. Refer to the Fee Schedule for specific fee information.

### 6. Deposit records and receipts
We may rely on the account number on any deposit slip or similar record we receive, even if that account number is associated with a name that's different from the name you've provided. It's not our responsibility to detect any inconsistency between the account number you provide and the name.

DEPOSIT ACCOUNT AGREEMENT
© 2020 JPMorgan Chase & Co.
Return to Table of Contents
Effective 5/17/2020

Case 19-44263 Doc# 298 Filed: 08/11/20 Entered: 08/11/20 14:31:36 Page 28 of 51

If you make a deposit, we may provide a receipt, but the amount on your deposit receipt is based entirely on the deposit slip you complete. We may confirm the funds you deposit and, after review, may adjust your account for any errors including any errors on your deposit slip.

If we give you a receipt for a CD that you decide not to open or we give you a receipt for a deposit that you then cancel, the receipt is void and you may not claim those funds.

## 7. Night depository and large cash deposits

Any of our employees may open and count any deposit that a branch banker didn't count in front of you, including night depository deposits and large cash deposits, and you agree not to dispute that employee's determination of the amount you deposited.

If you use our night depository, you are responsible for any disappearance, theft or loss of any envelope, bag or money before we issue a written receipt for the deposit.

## 8. Our responsibility for collecting deposits

If you deposit or cash a check, or we send one for collection, we act only on your behalf. Our only responsibility is to exercise reasonable care. We will not be liable for the lack of care of any bank or third party we use to collect checks, or for checks lost during shipping. We may send checks to any bank or to the entity on which the check was written in our customary manner. We may have agreements with other banks regarding times and methods for collecting or returning items.

If we lose a check, you agree to use reasonable efforts to help us locate or replace it.

Although we attempt to identify and prevent fraudulent transactions, we have no duty to you to determine whether any check you deposit or cash is forged, counterfeit, altered, improperly endorsed or otherwise improper.

## 9. Depositing remotely created checks

A remotely created check is created by the payee and not signed by the account owner. It states that the account owner authorized the check. If you deposit a remotely created check, you guarantee it was authorized by the account owner for payment in the amount it shows.

## B. Overdrafts and Fees; Overdraft Protection; Posting Order

## 1. Posting order

We post transactions to your account during each business day's overnight processing which is generally completed before our branches open the next day. The order in which we generally apply deposits and withdrawals to your account each business day:

- First, we add deposits to your account.
- Second, we subtract everyday (not recurring) debit card transactions, online banking transactions, ATM withdrawals, teller cash withdrawals, checks you write that are either cashed or deposited by a Chase branch banker, and wire transfers. We subtract all of these transactions in chronological order by using the date and time of each transaction. If we do not know the time of day you made a transaction, such as for some everyday debit card transactions, then it is posted as if it was made at the end of the day. Multiple transactions without a timestamp are subtracted starting with those having the highest dollar amount and moving to the lowest.
- Third, we subtract all other items, including checks you wrote that are either cashed or deposited at an ATM, and recurring debit card transactions starting with those having the highest dollar amount and moving to the lowest. We reserve the right to use a different order in certain states, such as Nevada.
- Finally, fees are assessed last.

During the day, if you review your account, you will see that we show some transactions as "pending." These transactions impact your available balance, but have not yet posted to your account and do not guarantee that we will pay these transactions to your account if you have a negative account balance at that time. We may still return a transaction unpaid if your balance has insufficient funds during that business day's overnight processing, even if it had been displayed as a "pending" transaction on a positive account balance during the day. If a transaction that you made or authorized does not display as "pending," you are still responsible for it and it may still be posted against your account during overnight processing.

## 2. Overdrafts

We may pay or decline to pay any item if your available balance is less than the amount of that item plus all other items received but not yet paid. We will decline any requested ATM withdrawal unless your available balance at the time is equal to or more than the amount of the requested withdrawal. Even if we've paid overdraft items before, we are not required to do it in the future. Special rules for everyday debit card transactions, overdraft and fees for these transactions, are described in the *Electronic Funds Transfer Service Terms*.

We look at your account only once to decide if the item would cause your account to become overdrawn.

It's your responsibility to avoid overdrawing your account.

## 3. Your responsibility to repay overdrafts

You must immediately pay the amount of any overdraft along with any fees that apply. If you don't, you may be charged additional fees or interest. We also may report you to consumer reporting agencies, close your account, or both. This could affect your ability to open accounts with us or other banks in the future.

You authorize us to use the money from any subsequent deposits to your account to pay any overdraft and resulting fees. Subsequent deposits include any federal or state benefit payments that you choose to deposit in any account (including direct deposit of Social Security benefits). You understand and agree that if you don't want your benefits applied in this way, you may change your direct deposit instructions at any time.

You agree to pay all costs and expenses we incur in collecting any overdraft. We may still pursue collection of the amount you owe (including suing you) after it is charged off.

## 4. Insufficient Funds and Returned Item fees

We will charge a fee for any item presented on a business day when your account is overdrawn, whether or not we pay the item. If we pay it, we will charge an Insufficient Funds Fee. If we return it, we will charge a Returned Item Fee (even if we later decide to pay that item after we had initially decided to return it). Special rules for everyday debit card transactions are described in the *Electronic Funds Transfer Service Terms*.

Refer to your product information and Fee Schedule for information about what fees apply and how fees are calculated for your account. We may limit the number of Returned Item and Insufficient Funds fees we charge for a business day. For business accounts, we may charge interest on any amount you are overdrawn that you haven't repaid promptly.

## 5. Overdraft Protection

Overdraft Protection allows you to link one of your accounts as your backup account to your checking account to help pay an overdraft. If your checking account does not have enough money, we will use the available funds from your backup account to authorize or pay transactions.

DEPOSIT ACCOUNT AGREEMENT

© 2020 JPMorgan Chase & Co.
Return to Table of Contents
Effective 5/17/2020

Case 19-10289    Doc# 298    Filed: 08/11/20    Entered: 08/11/20 14:31:36    Page 29 of 51

**Establishing or Canceling Overdraft Protection:** Any owner of both a qualifying checking account and the backup account may enroll in Overdraft Protection without the consent of other owners and both accounts must share at least one owner to maintain Overdraft Protection. Any owner of the checking account or the backup account may cancel Overdraft Protection (by terminating the service or closing the account) without the consent of other owners. A backup account can provide Overdraft Protection for more than one checking account, but a checking account can have only one backup account. A personal checking account may be linked to a Chase personal savings account; and a business checking account may be linked to a Chase business savings account or a business line of credit in good standing. We may cancel your Overdraft Protection service at any time. Your request to add or cancel Overdraft Protection will become effective within a reasonable time after approval.

**Transfers:** We will make one Overdraft Protection transfer per business day that will appear on your statement for both accounts. If you have enough available funds in your backup account, we will automatically transfer enough to bring your checking account balance to zero. If you do not have enough available funds in your backup account to bring your checking account balance to zero, but you have enough available funds to pay one or more transactions and/or your previous day's negative balance, we will transfer that amount. If the amount transferred does not bring your checking account balance to zero, your checking account will become overdrawn and you may be charged Insufficient Funds or Returned Item fees. If we authorize your transaction, we will leave the funds in your backup account until we pay the transaction, which may take several days. However, if you use those funds before the transaction is paid there will not be available funds to make the transfer and your checking account may become overdrawn and charged an Insufficient Funds Fee. The available balance for a savings account is determined at the time that we authorize a transaction or at the end of business day processing. The available balance for a business line of credit is determined at the end of the previous business day processing. We are not required to notify you if funds from the backup account cannot be transferred for Overdraft Protection (for example if the account is dormant, purged, restricted or not in good standing). Refer to the section *Restricting Your Account; Blocking or Delaying Transactions* for additional information.

Withdrawals and transfers out of your savings account, including Overdraft Protection transfers, are limited by federal law. In addition, Overdraft Protection transfers may result in Savings Withdrawal Limit Fees. Both of these limits are explained in more detail in sections *Limits on savings account withdrawals* and *Savings Withdrawal Limit Fee*.

## C. Electronic Funds Transfer Service Terms; Payments, Deposits and Transfers You Make or Receive by Electronic Methods

We provide a variety of electronic funds transfer (EFT) services for deposit accounts. These include payments, deposits and transfers that you make or receive by electronic methods, such as with your card, telephone, or chase.com.

### 1. Types of EFT services

### a. Debit and ATM cards

As a condition of opening certain accounts, you agree that we may automatically issue you a Chase debit or ATM card. However, activating your card is not required to keep your account open. We may deactivate any temporary ATM card when you activate your debit card.

You can use your card as follows:

**At ATMs to:**

- Withdraw cash;
- Transfer money;
- Check your balances;
- Deposit cash or checks;*
- Make payments to qualifying Chase credit cards and loans;*
- Obtain a copy of recent account activity.*

Services marked with an asterisk (*) are available only at Chase ATMs, and all services may not be available at all Chase ATMs.

When you use a Chase ATM, you will have access to all of your personal checking, savings, Chase Liquid® and credit card accounts, regardless of whether the accounts are linked to your card. When linking multiple accounts to your card, one checking account and one savings account will be designated as primary. We also offer cards with limited functions for your deposit accounts, such as deposit-only business cards and prepaid cards that can be linked to a checking or savings account. Subject to the limited functions provided for each card, limited-function cards are also considered "cards" under this agreement.

You can use a non-Chase ATM only if it is in a participating network. Your primary checking and savings accounts will be accessible on that network, and your other linked accounts may be accessible. Outside the U.S., only your primary checking account is usually accessible. We may charge a Non-Chase ATM Fee, and the ATM owner/network may also charge a fee. Any of these fees may be charged for any activity, including withdrawals, balance inquiries and transfers. We generally waive the Non-Chase ATM Fee for a balance inquiry or transfer if it is made in connection with a withdrawal at the same non-Chase ATM at the same time with the same card. On some accounts, we will refund ATM fees charged by the ATM owner/network; however, some ATM owners/networks do not identify these fees in the information they send to us and, as a result, we may not automatically refund the fee. If for any reason the refund is not processed, please contact us. If you choose to convert an international transaction to U.S. dollars at either an ATM or on a purchase, foreign currency commissions and fees included in the exchange rate charged by third parties are excluded from Chase reimbursements.

**You can use your debit card (but not your ATM card):**

**At participating merchants to:**

- Purchase goods and services. Purchases are subtracted from your primary checking account. If you have arranged with your merchant to make recurring payments, you must notify the merchant if your card number or expiration date has changed or your debit card is closed. We may also provide the merchant or the participating network your new account number and expiration date.
- Withdraw cash while making a purchase using your PIN if the merchant permits the cash-back option.
- Send or receive payments from another person, or receive payments from a business by providing your card number to third-party payment services.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.

Return to Table of Contents

Page 9 of 24

Effective 5/17/2020

Case 19-44063    Doc# 298    Filed: 08/11/20    Entered: 08/11/20 14:31:36    Page 30 of
51

**At participating financial institutions to:**

- Withdraw funds at a teller. Withdrawals are subtracted from your primary checking account. You will be charged a Non-ATM Cash Fee.

## b. Electronic transfers using your account number

You may authorize a third party to transfer funds to or from your account by providing your account number and your routing number. These transfers may use various payment networks and may take various forms, such as:

- Employer payroll, government benefits or other direct deposits;
- One-time or recurring charges to your account to a utility payment or to pay other bills; or
- A "check conversion" transfer, where a merchant or other payee creates an electronic transfer from your paper check. The merchant may keep your check or return it to you.

## c. Online banking and Chase Mobile

You may use chase.com or Chase Mobile to view your account information, make deposits (Chase Mobile only), transfer funds between your Chase accounts, pay qualifying Chase loans or credit cards, or make payments from your account to third parties. Enroll for these services on chase.com or by downloading the Chase Mobile app for select mobile devices. You must agree to the additional disclosures and specific terms for using these services when you enroll.

## d. Telephone banking

You may use our automated customer service system or speak to us to get your account information, transfer funds between your accounts with us, or pay qualifying Chase loans or credit cards. You must have a valid deposit or loan account and a valid password or PIN to use the automated system. Business account owners may also use a valid Taxpayer Identification Number (TIN).

## e. Transfers for Overdraft Protection

Transfers to and from your accounts for Overdraft Protection are also EFTs and subject to these terms.

## 2. Important information and agreements about your card

### a. Authorizations and holds

Most merchants ask us to authorize your purchase. When we give authorization to a merchant, we will reserve or place a hold on your balance, generally for three business days, for the amount of the authorization. There may be delays of several days between the authorization and the date the transaction is presented for payment, and your transaction may post to your account after the authorization hold has lifted.

We may authorize or refuse to authorize a transaction based on a different amount than the authorization request, because some merchants request authorization for an amount that is unrelated to the actual amount of the purchase (such as self-service fuel).

For some types of purchases we may place a hold for a longer period. There are times—for example, at restaurants, hotels or car rental agencies—that merchants won't know the exact amount of your purchase when they request the authorization. If the authorization is more or less than your actual purchase amount, the hold may remain for a day or two even after your purchase amount has been subtracted from your balance. We will pay the purchase amount from your balance whenever the merchant sends it to us, even if the hold has expired.

### b. Overdrafts with your card

For personal accounts, unless you have notified us that you DO want us to pay debit card overdrafts at our discretion, we generally won't authorize an everyday debit card transaction if your available balance isn't enough to pay that transaction, and we will not charge an Insufficient Funds Fee. For business accounts, if you have notified us NOT to pay overdrafts we generally won't authorize a debit card transaction if your available balance isn't enough to pay that transaction, and we will not charge an Insufficient Funds Fee.

When we give authorization to a merchant for your purchase, your available balance will decrease. But the authorization will not prevent certain items, such as ACH transactions and checks, from posting to your account, which can leave your account without enough funds. To avoid Insufficient Fund and Returned Item fees, be sure to keep enough funds in your account to avoid overdrawing your account, including enough funds for previously authorized debit card transactions not yet posted to your account.

We rely on transaction coding sent to us by the merchant or other third party to determine whether the transaction is everyday or recurring, which affects whether or not we would authorize these transactions at our discretion and whether we can assess you Insufficient Funds Fees. If any other transaction overdraws your account, we will assess fees described in the section *Overdrafts and Fees; Overdraft Protection; Posting Order* and the Fee Schedule.

### c. Canceling your card

We may cancel your card at any time without notice. You may cancel your card by calling us. If you do, please destroy it.

### d. Our right to refuse transactions

We can refuse to authorize any transaction when your card has been reported lost or stolen or when we reasonably believe there may be fraudulent, suspicious or illegal activity. If you lock your card, we will stop authorizing everyday debit card transactions and ATM withdrawals but may still authorize recurring debit card transactions. Any card we issue to you will be unlocked when you activate it.

### e. Foreign exchange transactions

The exchange rate applied to card transactions that occur in a different currency will be selected by the network that processes the transaction. The network will select from the range of rates available in wholesale currency markets or a rate mandated by the government that issues or controls the currency in that country on the date it processes the transaction. The processing date on which the exchange rate is applied may differ from the date you used your card. When the card transaction is posted to your account, we will charge a Foreign Exchange Rate Adjustment Fee on the transaction amount after conversion to U.S. dollars.

The exchange rate we use may include a spread, commissions or other costs that we, our affiliates or vendors charge in providing foreign exchange to you. The exchange rate may vary among customers depending on your relationship, products with us, or the type of transaction being conducted, the dollar amount, type of currency, and the date and the time of the exchange. You should expect that these rates will be less favorable than rates quoted online or in publications.

Return to Table of Contents

Case 19-44208    Doc# 298    Filed: 08/11/20    Entered: 08/11/20 14:31:36    Page 31 of
51

### f. Debit or credit prompts at terminals

If a merchant asks "Debit or Credit?" when you make a purchase, you can choose either one and your purchase will be subtracted from your primary checking account.

- If you select Debit, you must also enter your PIN.
- If you select Credit, you may have to provide a signature except for some smaller amounts and when paying for self-service fuel.

### g. ATM safety and safeguarding your account information

**Be safe at ATMs.** Some ATM locations are recorded by a surveillance camera or cameras. We advise you to be aware of your surroundings before, during and after any ATM use. Here are some additional tips:

- Choose an ATM that is well lit.
- Don't use an ATM that looks unusual or altered.
- During the hours of darkness, consider having someone accompany you to the ATM.
- If you suspect the ATM isn't working properly or if you notice anything suspicious, cancel the transaction and find another machine.
- When using a Chase ATM with a separate entry door, you should close the door completely upon entering and should not permit entrance to any unknown person after regular banking hours.
- If you need emergency assistance as a result of criminal activity or medical emergency, contact 911.
- At a walk-up ATM, minimize transaction time by having your card ready to use. At a drive-up ATM, keep your car engine running and lock your doors.
- Stand between the ATM and anyone waiting to use the machine or cover your hand so others can't see your PIN or the transaction amount.
- As soon as your transaction is complete, remove your card from the ATM, and then put away your money, receipt, and card.
- Contact the police or a security officer if you see any suspicious activity at the ATM. If you think you're being followed, go to a heavily populated, well lighted area, and immediately contact the police.
- Complaints concerning security at New York Chase ATMs should be reported to the Chase Security Department at 1-800-900-0001 or the New York State Department of Financial Services at 1-888-697-2861.

**Keep your PIN confidential.** Never give your PIN to anyone, and don't write it down. In addition, to keep your card information safe:

- Use a PIN that others can't easily figure out.
- To change your PIN (or if you forget your PIN), request a new PIN at chase.com, call us or visit any Chase branch.

**Protect your debit card or ATM card as you would a credit card or cash.**

**Notify us immediately if your card is lost or stolen,** or if you discover any other error. The sooner you report a problem, the sooner we can take precautions to ensure your card isn't misused.

### 3. Limitations on transfers, amounts, and frequency of transactions

To protect your balance, we place daily dollar limits on ATM withdrawals and card purchases, even if your available balance is higher than the daily limit. Your limits are contained in the product information you received when you opened your account.

However, we may:

- Allow transactions that exceed your limits.
- Temporarily reduce your limits without notice, for security purposes.
- Change your limits (we'll notify you if we do).

You are allowed a limited number of withdrawals from your savings account. See *Limits on savings account withdrawals* for details.

Your card will be restricted if we consider your account to be inactive or dormant.

### 4. Receipts and statements

You can receive or have the option to receive a receipt at ATMs, from a banker at a branch, online through chase.com, and at merchant locations each time you make a transaction. However, for certain small dollar transactions at merchant locations, you may not receive a receipt.

See *Statements and notices* for information about periodic statements.

To confirm that you have received a direct deposit, review your balance and recent transactions through chase.com, Chase Mobile, at an ATM, or call us.

### 5. In case of errors or questions about your electronic funds transfers

If you think your statement is wrong, or if you need more information about a transaction listed on it, see the *How to Contact Us* section.

**For personal accounts only, the following procedures apply:**

We must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error appeared. Please provide us with the following:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. However, if we need more time, we may take up to 45 days to investigate your complaint or question. If we do this, we will credit your account within 10 business days for the amount you think is in error,

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.

Case 19-10239   Doc# 298   Filed: 08/11/20   Entered: 08/11/20 14:31:36   Page 32 of

so that you will have the use of the money during the time it takes us to complete our investigation. If your first account deposit is less than 30 days before the date of the suspected error, the 10-business-day period is extended to 20 business days. If your first account deposit is less than 30 days before the date of the suspected error or the transaction occurred at a point-of-sale location or outside the U.S., the 45-day period is extended to 90 days.

If you call us, we may require that you send us your complaint or question in writing within 10 business days. If we do not receive it within 10 business days, we may not credit your account.

We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**For business accounts,** our practice is to follow the procedures described above, but we are not legally required to do so. For example, we are not required to give provisional credit, or to finalize the claim during the periods stated above. We require you to notify us no later than 30 days after we sent you the first statement on which the error appeared. We may require you to provide us with a written statement that the disputed transaction was unauthorized.

## 6. Our liability for failure to complete transactions

If we do not complete a transaction from your personal account on time or in the correct amount, we will be liable for your losses or damages. However, we are not liable for any failed transaction if you do not have enough money in your balance to cover a transaction, if the ATM or device does not have enough cash or is not working properly, if circumstances beyond our control prevent the transaction, if the merchant requests authorization for an amount greater than the purchase amount, or if there are other exceptions stated in this agreement or as provided by law. We are not liable for failure to complete a transaction on a business account if we send you notice that the transaction was not completed.

## 7. Preauthorized (recurring) transfers and stop payments

You may use your account or debit card to make recurring payments. If these recurring payments vary in amount, the payee will tell you the amount and date of the next payment at least 10 days before the payment due date. You may choose to get this notice from your payee only when the payment would differ by more than a certain amount from the previous payment or when the amount would fall outside certain limits that you set.

You can stop some payments before the scheduled payment date in the following ways:

1. If you provided your card number for the recurring transfer, you must contact us by telephone or at the branch and give us the exact card number. We will close the card and you can replace it with a new card and card number upon request.

2. If you provided your account number and routing number for ACH direct debits to your account (both recurring and one-time payments), you must contact us by telephone or at the branch and give us your account number and the exact name of the payee. We will also need the exact amount of the payment, a range of amounts or an instruction to block all payments from the named payee. We will charge a Stop Payment Fee. We are not responsible for stopping payment on ACH transactions if you do not provide this information or if you provide inconsistent information. We may refuse a payment to a payee with a similar name that we believe to be the same payee; however, we are not liable if we don't refuse the payment. If you see a "pending" payment for a different amount or for a different payee than the stop payment you placed, contact us before the end of the business day so we can try to refuse payment. We may send you a written confirmation of your stop payment. We may rely on the information in the confirmation unless you notify us immediately of any errors. We may stop multiple transactions that have the amount and exact payee name you provided unless you cancel your stop payment request.

For personal accounts, your ACH stop payment is effective until we have determined that the ACH transaction is no longer occurring, or for 18 months, whichever is longer.

For business accounts, your ACH stop payment will either be effective:

- Until we have determined that the ACH transaction is no longer occurring, or for 18 months, whichever is longer, or

- One calendar year with automatic renewal annually for up to six additional years. We will list scheduled renewals on your business account statement 60 to 90 days in advance. The stop payment will be renewed, and you will be charged a Stop Payment Automatic Renewal Fee, unless you notify us not to renew by following the instructions in the statement.

3. If you set up your recurring or one-time bill payments or transfers through chase.com or Chase Mobile, you can use that service to cancel pending and future payments.

4. If you previously set up recurring account transfers in the branch, you can only cancel those pending and future transfers in the branch.

We will generally process a stop payment request as soon as we receive it. If you place a stop payment three or more business days before the transfer is scheduled, and we still pay, we will be responsible for your losses or damages.

For business accounts, you can enroll in ACH Debit Block on chase.com to block and return ACH debit transactions. The terms of the service are governed by the Fraud Protection Services Agreement.

## 8. Disclosure of account information to third parties

Information about your account or the transactions you made will be disclosed to third parties:

- As necessary to complete transactions;
- In connection with the investigation of any claim you initiate;
- To comply with government agency, arbitration or court orders (including subpoenas);
- With your written permission;
- As permitted by our Privacy Notice.

## 9. Notice of your rights and liabilities

**For personal accounts only:**

Tell us AT ONCE if you believe your card, PIN or code has been lost or stolen. Calling us is the best and fastest way of keeping your possible losses to a minimum.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.
Return to Table of Contents
Page 12 of 24
Effective 5/17/2020

If you tell us within two business days, you can lose no more than $50 if someone used your card, PIN or code without your permission. If you do NOT tell us within two business days after you learn of the loss or theft of your card, PIN or code and we can prove we could have stopped unauthorized transactions if you had told us, you could lose as much as $500. If your statement shows electronic funds transfers that you did not make, tell us right away. If you do not tell us within 60 days after the statement was sent or otherwise made available to you, you may not get back any money you lost after the 60 days if we can prove that we could have prevented the transactions if you had told us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, let us know. We will extend the time periods.

**For business accounts only, you agree:**

- To assist us in the investigation of claims for unauthorized transactions and related prosecution by completing the appropriate statements and reports reasonably requested by us;
- To notify us promptly in writing if any user of a card is no longer employed by you or authorized to conduct business on your behalf;
- That by allowing anyone to use your card, or by failing to exercise ordinary care (such as storing your PIN with your card or selecting your birthday as your PIN), you will be responsible for all authorized and unauthorized transactions;
- That all of the provisions of the Deposit Account Agreement, including liability limitations and the requirement that you give us notice of unauthorized items within 30 days, apply to your EFT services.

**Special Provisions for Card Transactions (Zero Liability Protection) for personal and business accounts:**

You are not liable for any unauthorized transactions, including transactions made at merchants, over the telephone, at ATMs or on the Internet, if you notify us promptly.

However, these special provisions do not apply where you were grossly negligent or fraudulent in the handling of your account or card, where you have given someone else your card, card number or PIN, or where you delay reporting unauthorized transactions for more than 60 days (30 days for business accounts).

**10. Fees**
Fees for all EFT services are disclosed in our Fee Schedule and product information.

**11. Services not covered by this part; separate agreements**
For personal accounts, EFT services described in the *Electronic Funds Transfer Service Terms* do not include wire transfers and any transactions that are not covered by Consumer Financial Protection Bureau Regulation E.

For business accounts, wire transfers and other services not specifically described in the *Electronic Funds Transfer Service Terms* are governed generally by the Deposit Account Agreement or by separate agreements.

We may offer additional EFT services besides those described in the *Electronic Funds Transfer Service Terms* that have separate agreements and disclosures.

**D. Other Ways to Use Your Money**

**1. When you can withdraw funds you've deposited**
Generally, for checking and savings accounts, you may withdraw funds the next business day after the business day you deposit them. But in some cases you may not. Please see the *Funds Availability Policy* for details.

If funds that become available and you can withdraw them, that does not mean the check or other item you've deposited is authorized, is "good," has "cleared," or has been paid by the paying bank. It's also possible that the check will be returned months after we've made the funds available to you and you've withdrawn them. No one, including our employees, can guarantee to you that a check will not be returned.

**2. Withdrawals and transfers from your account**
We may subtract from your available balance the amount of any check or other item that we receive throughout the day that you or any person you authorize created or approved. We may require you or any person you authorize to provide us with identification, documentation or information that's acceptable to us before allowing the transaction. If check writing is not an available feature of your account, we will not issue you checks, and you are not permitted to write checks drawn on your account. We will not pay checks if you attempt to do so.

**3. Autosave feature**
You can set up automatic transfers from your personal checking account to your other accounts. Use the Chase Mobile app or chase.com to set up, review, change or cancel your transfers.

We will not be liable to you for our failure to transfer funds under any Autosave feature that you select, for any reason, including system outages or defects. In particular, we will not be liable for any losses if the funds were not transferred, including interest you might have earned on a savings account.

**4. Transactions in a foreign currency**
Any transaction we conduct for you in a foreign currency, such as sending or receiving a wire transfer to or from another country, depositing a foreign check, or exchanging foreign currency in our branches, will use an exchange rate. Currency exchange is only available at a limited number of branches and in certain currencies. The foreign exchange rates we use are determined by us in our sole discretion. The exchange rate we use will include a spread and may include commissions or other costs that we, our affiliates, or our vendors may charge in providing foreign currency exchange to you. The exchange rate may vary among customers depending on your relationship, products with us, or the type of transaction being conducted, the dollar amount, type of currency, and the date and time of the exchange, and whether the transaction is a debit or credit to your account. You should expect that these rates will be less favorable than rates quoted online or in publications.

We are not required to accept for deposit checks that are drawn on a non-U.S. bank or payable in a foreign currency. We may accept those checks on a collection basis without your specific instruction to do so. We can reverse any amount we've added to your balance and send the check on a collection basis even after we've taken physical possession of the check. Our Funds Availability Policy does not apply to any foreign check, whether we accept it for deposit or on a collection basis. The actual amount you receive for checks payable in a foreign currency will be determined at the exchange rate for such items that's in effect when we're paid for the check. If a check is returned later for any reason, we will subtract the amount of the check and any charges from other banks from your balance. We will use the applicable exchange rate in effect at the time of the return, which may be different from the exchange rate originally used for the deposit.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.
Return to Table of Contents
Page 13 of 24
51
Effective 5/17/2020

Case 19-11292 Doc# 298 Filed: 08/11/20 Entered: 08/11/20 14:31:36 Page 34 of

## 5. Large cash withdrawals

We may place reasonable restrictions on when and how you make any large cash withdrawal. We may also require that you sign a document releasing us from any liability if you are robbed or assaulted. We may refuse the withdrawal request if you do not agree with these conditions.

## 6. Stop payments on a check

If you request us to stop payment on a check, we will charge either a Stop Payment Fee or an Online or Automated Phone Stop Payment Fee depending on how you request your stop payment. However, the stop payment will not be effective if we have already certified, paid or otherwise become responsible for the check. For example, we can't stop payment on a check we've already cashed or a deposited check where the funds have already been withdrawn. Refer to the *Electronic Funds Transfer Service Terms* for how to place a stop payment on recurring electronic payments.

You may request a stop payment by calling us, in person, or through chase.com or Chase Mobile. We use automated systems to identify items, so we need specific information to process the request. In order for us to identify the item, you must give us the account number on which the check is drawn and either:

- The exact check number or a range of check numbers,
- The payee name and the exact amount of the check, or
- The payee name and range of amounts of the check.

We are not responsible for stopping payment on checks if you do not provide this information or if you provide inconsistent information. We may refuse a payment to a payee with a similar name that we believe to be the same payee; however, we are not liable if we don't refuse the payment. We may send you a written confirmation of your stop payment. We may rely on the information in the confirmation unless you notify us immediately of any errors. When the stop payment order expires, we may pay the item and have no duty to notify you.

For personal accounts, your stop payment request lasts for one year even if the check is presented more than once unless you cancel your stop payment request. However, you may place a new stop payment order, which will be effective for one calendar year from the day you place the additional order. An additional fee will be charged.

For business accounts, you may place a stop payment for either:

- One calendar year with automatic renewal annually for up to six additional years. We will list scheduled renewals on your business account statement 60 to 90 days in advance. The stop payment will be renewed, and you will be charged a Stop Payment Automatic Renewal Fee, unless you notify us not to renew by following the instructions in the statement, or
- One calendar year (this option is not available for stop payments initiated on chase.com or Chase Mobile).

Generally, we will complete your request as soon as we receive your instructions.

We may allow you to place a stop payment on a cashier's check, teller's check or certified check if you provide us a sworn statement—in a form we deem acceptable—that the check is lost, stolen or destroyed. Even if we agree to attempt to stop payment on a cashier's check, teller's check (official check) or certified check, if the check is presented for payment, we may pay it and you will be liable to us for that item, unless otherwise required by applicable law. After you place a stop payment, we are not required to refund the check amount or issue a replacement check until at least 90 days after the original check's issue date. We are not required to refund the check amount or issue a replacement check if the check is presented for payment within 90 days after the issue date.

## 7. Account numbers on funds transfers

If you instruct us to send a funds transfer, such as a wire or ACH transfer, we and every other bank involved in the transfer may rely on any bank number or account number you provide. If the funds transfer instruction gives both a bank number or account number and a name, and the name identifies a different person from the bank or account owner identified by number, we and other banks that handle the funds transfer may still rely exclusively on the number. We have no duty to detect any inconsistency between the bank number or account number and the name.

## 8. Limits on savings account withdrawals

Federal regulations limit the number of withdrawals and transfers out of your savings account. In this agreement, a savings account means an account with limited withdrawal privileges, including a money market account. During any monthly statement period, you may make no more than six withdrawals or transfers (for example by check, ACH, telephone, Internet or Overdraft Protection transfer) out of these accounts. However, this limit does not apply to withdrawals made at a branch or at an ATM, by mail (by check payable and mailed to you) or by messenger. We are required to ensure that you comply with this limit. If you exceed this limit after we've notified you of a violation, we will change your account to one we choose that doesn't limit withdrawals, and it may be an account that pays less or no interest. For Retirement Money Market accounts, we may either refuse or delay any withdrawal request that violates these requirements.

## 9. Our right to require advance notice of withdrawals

For all savings accounts and all personal interest-bearing checking accounts, we reserve the right to require seven days' prior written notice of withdrawal.

## 10. Check cashing

If a person who is not our deposit or loan customer tries to cash your check at any of our branches, we may charge them a fee or refuse to cash it. We may also require that they provide us identification we deem acceptable.

## 11. Incomplete, future-dated, conditional or stale-dated checks

You agree not to write a check that's incomplete, future-dated or tries to limit the time or method of payment with a condition, such as "Void after 180 days" or "Valid only for $1,000 or less." We have no duty to discover, observe or comply with these conditions and may pay such checks. If we pay a conditional check, the conditions do not apply to us.

We may choose to pay or not to pay a stale-dated check (dated more than six months before it is presented), regardless of how old it is. If we pay it, you will be responsible for the check.

## 12. Multiple signatures

We are not required to comply with any multiple-signature requirement, either on personal or business accounts, even if your signature card specifies that multiple signatures are required or you have otherwise instructed us to do so. A multiple-signature requirement is for your internal control purposes only.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.

Case 19-44963    Doc# 298    Filed: 08/11/20    Entered: 08/11/20 14:31:36    Page 35 of 51

### 13. Facsimile signatures

We may pay a check bearing any form of facsimile or computer-generated signature. If you use a facsimile or computer-generated signature, or provide a signature card authorizing any such signature, you will be solely responsible for any check bearing a similar signature, regardless of your negligence or whether the signature was the same one you previously used.

### 14. Review of checks and signatures

Check payment is highly automated, and we pay millions of checks every day. Although we inspect some checks, you agree that reasonable commercial standards don't require us to do so. If we return a check because we believe it doesn't match your signature on file with us, we're not liable to you even if you authorized the check. If the numeric amount on a check doesn't match the amount written out in words, we may select either one when paying it. We have no duty to prevent a check from being presented more than once.

### 15. Notice that a check has been deposited or cashed

If we are notified that a check drawn on your account has been deposited or cashed at another bank, we may place a hold on your account for the check amount, which may cause other items to overdraw the account. If the amount of the check identified in the notice exceeds your balance at the time we receive the notice, we may notify the other bank of that fact.

### 16. Substitute Checks and Your Rights
#### What is a substitute check?

To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks, with a reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

#### What are your rights as a consumer regarding substitute checks?

In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, Insufficient Funds Fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if applicable) within 10 business days after we receive your claim and the remainder of your refund (plus interest if applicable) no later than 45 calendar days after we receive your claim. We may reverse the refund (including interest) if we later determine the substitute check was correctly posted.

#### How do you make a claim for a refund?

If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us. You must contact us within 40 calendar days of the date that we mailed or otherwise delivered the substitute check or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

#### Your claim must include:

- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- The following information to help us identify the substitute check: the check number, the name of the person to whom you wrote the check, and the amount of the check.

#### Depositing substitute checks

You may receive a substitute check, such as when a check you deposited is returned unpaid. If you deposit a substitute check and we suffer a loss, cost or expense as a result, you will have to pay us that amount.

## IV. Funds Availability Policy

#### When Your Deposit Is Received:

If you make a deposit with a banker at a branch on a business day, we will consider that day to be the day of your deposit. If you make a deposit on a business day before our cutoff time at a Chase ATM, we will consider that day to be the day of your deposit. However, if you make a deposit on a day that is not a business day, or make an ATM deposit after the ATM cutoff time, we will consider the deposit to have been made on the next business day.

- For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays and federal holidays.
- For deposits and transfers at most ATMs, the cutoff time is 11 p.m. Eastern Time (8 p.m. Pacific Time). For ATMs with an earlier cutoff, the ATM screen will notify you of the cutoff time.
- Deposits placed in a night depository are considered received when we remove them from the night depository; we will remove deposits no later than the next business day.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.

Page 15 of 24
Effective 5/17/2020

Return to Table of Contents
51

Case 19-34054 Doc# 298 Filed: 08/11/20 Entered: 08/11/20 14:31:36 Page 36 of

- Branches in some locations may be closed on business days in observance of a state holiday or because of an emergency, and deposits made at a night depository when those branches are closed will be considered received on the next business day when the branch is open.
- We will not accept cash deposits by mail. Check deposits made by mail should be addressed to:

National Bank By Mail
PO Box 6185
Westerville, OH 43086

All deposits made by mail and addressed to any other Chase facility may be forwarded to the National Bank By Mail facility in Westerville, Ohio, and will be considered received on the date the deposit is received by that facility.

**For all accounts other than Chase Analysis Business Checking (with or without Interest):** Wire transfers, electronic direct deposits and cash deposits will be available on the day we receive your deposit. Except as described later in this policy, when you make other deposits, the funds are available on the first business day after the day we receive your deposit.

In most cases when you deposit checks drawn on a Chase account:

- Deposits made with a banker at a branch will be available on the same day we receive your deposit;
- Some or all deposits made at an ATM will be available on the same day we receive your deposit.

Once funds are available, you may withdraw them or use them to pay checks and other items. For online banking deposits, different terms may apply.

**For Chase Analysis Business Checking (with or without Interest):**

**Same-day availability:** Wire transfers, electronic direct deposits, and cash deposits made with a banker at a branch or at an ATM will be available on the day we receive your deposit.

**Next business day availability:** Funds from the following deposits are available on the first business day after the day we receive your deposit:

- U.S. Treasury checks that are payable to you;
- Checks that are drawn on us.
- The following items, if you make the deposit with a banker at a branch:
  a. State and local government checks that are payable to you, if you use the "Next Day Funds Availability" deposit slip available at any branch upon request;
  b. Cashier's, certified, and teller's checks that are payable to you, if you use the "Next Day Funds Availability" deposit slip available at any branch upon request;
  c. Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders that are payable to you.

**Second business day availability:** Funds from all other deposits are available no later than the second business day after the day we receive your deposit. Available funds may be withdrawn in cash or used to pay checks and other items.

For online banking deposits, different terms may apply.

**Longer Delays May Apply:**

**For all accounts other than Chase Analysis Business Checking (with or without Interest):** In some cases, we may not make all of the funds that you deposited by check available by the first business day after the day of your deposit. Funds may not be available until the second business day after the day of your deposit. However, the first $225 of these deposits will be available on the first business day after the day of your deposit, unless we delay availability for one of the circumstances listed below. If you will need the funds from a deposit right away, you should ask us when the funds will be available, but further review of the deposit after we receive it may still result in delayed availability.

**For all accounts:** We may delay availability for the full amount of the check, including the first $225, up to the seventh business day after the day of your deposit under the following circumstances:

- We believe a check you deposited will not be paid;
- You deposited checks totaling more than $5,525 in any one day;
- You redeposited a check that has been returned unpaid;
- You have overdrawn your account repeatedly in the last six months; or
- There is an emergency, such as failure of communications or our systems.

If your check deposit is made with one of our employees or at an ATM and we decide at that time to delay your ability to withdraw funds, we will tell you then. If we decide to delay availability of your funds after you complete your deposit, we will mail you a deposit hold notice by the business day after we decide to take that action.

**Special Rules for CDs and Retirement Money Market Accounts:**
Generally, funds you deposit will be available within one business day except when you deposit checks that total more than $5,525 in a business day. The amount exceeding $5,525 will be available no later than the seventh business day after the day of your deposit. However, we are not required to let you withdraw principal from a CD before it matures.

**Special Rules for New Accounts:**
If you are a new customer, the following special rules may apply during the first 30 days your account is open:

- Funds from deposits of the first $5,525 of a business day's total deposits of cashier's, certified, teller's, traveler's, and federal, state, and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you. The excess over $5,525 will be available on the seventh business day after the day of your deposit. If your deposit of these checks (other than U.S. Treasury checks) is not made with a banker at a branch, the first $5,525 will not be available until the second business day after the day of your deposit; and

Return to Table of Contents

Case 19-44292    Doc# 298    Filed: 08/11/20    Entered: 08/11/20 14:31:36    Page 37 of
51

- Funds from all other check deposits will be available no later than the seventh business day after the day of your deposit.

**Holds on Other Funds:**

If we cash a check for you that is drawn on another bank, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available on the day they would have been available if you had deposited the check.

# V. Safeguarding Your Information

## A. Checks and Other Documents You Use

We are not responsible for losses or delays that result from improper printing on checks or other account documents that you obtain through someone other than us. We may refuse to accept for deposit or to pay checks that we cannot process or photograph using our customary equipment.

## B. Protecting Your Checks

You must protect your checks and other account documents and information from theft and unauthorized use. You must write your checks in a way that prevents someone else from completing, altering or adding to them without your authorization. If you become aware that any checks or other documents and information, such as statements, have been lost or stolen, you must notify us immediately. If you fail to do any of these things, such as leaving your checks where they can easily be stolen, we are not responsible for any losses that may result.

## C. Notice of Errors, Forgeries and Unauthorized Signatures

You must notify us in writing within 30 days after we mail a statement or otherwise make a statement available (for example, paperless statements) if:

- A check that you did not authorize or that is altered is listed on the statement;
- Your account statement contains any errors; or
- You did not receive your scheduled statement.

This 30-day notice requirement does not limit our rights to attempt to collect on unauthorized or altered checks from other banks.

You must notify us in writing of any unauthorized, improper or missing endorsements within six months after the account statement is mailed or made available.

You must provide us with all information we need to investigate the alleged error or item. You must also file any police reports and provide any supporting affidavits and testimony we reasonably request.

If you do not comply with the requirements above, we are not required to reimburse you for any claimed loss, and you cannot bring any legal claim against us in any way related to the check or errors. In addition, if you fail to notify us of any unauthorized check within 30 days (14 days in New York) after we mail, or in any other way make available, a statement that lists an unauthorized check, we are not required to reimburse you for unauthorized checks initiated by the same wrongdoer(s) that we pay after that time. These requirements do not apply to personal account transactions covered by the *Electronic Funds Transfer Service Terms*. You also have certain rights under federal law for substitute checks; please see *Substitute Checks and Your Rights* for more information.

# VI. Managing and Maintaining Your Account

## A. Interest on Checking and Savings Accounts

When you open a checking or savings account that pays interest, we will provide you a rate sheet stating the current interest rate and Annual Percentage Yield for your account. The rate sheet is considered a part of this agreement.

Your account has a variable interest rate. That means we may change the interest rate and Annual Percentage Yield as often as we choose, without limits and without notice. Interest begins to accrue on the business day we receive credit for your deposit. For cash, wire transfers and electronic direct deposits, interest begins to accrue on the business day of your deposit.

We use the daily balance method for calculating interest. This method applies a daily periodic rate to the balance in your account each day, which may be based on your present balance or collected balance as explained in the product information for your account. The collected balance is the balance of all deposits in your account on which we have received credit for the deposited funds (determined by the availability schedule of our Federal Reserve Bank for checks and similar items). We reserve the right not to pay interest on any deposited item that is returned to us unpaid.

Interest is credited and compounded monthly. However, Retirement Money Market accounts with interest distributions will not compound, and interest will be credited on the distribution date. Unless otherwise stated in your product disclosure, interest is computed on a 365-day basis. We pay interest only in whole cents. Therefore, at the end of each interest payment period (usually monthly), any fractional amount of interest less than half of one cent will be rounded down and any fractional amount of interest equal to half of one cent or more will be rounded up to the next whole cent.

## B. Linking Your Accounts; Statements

### 1. Linked accounts

You may link your qualifying accounts to your checking account to help you avoid some fees and get relationship rates. An account may be linked to only one checking account.

We may automatically link accounts or we may provide some of the benefits you would be eligible for had you requested your accounts to be linked. If we don't, you may ask us to link your accounts. Your account information may be made available to any other owner on any of the linked accounts. If the checking account to which your other accounts are linked closes for any reason, it is your responsibility to request any remaining eligible accounts to be linked. If we determine your accounts are no longer eligible for linking, we may delink them and we are not required to notify you if we do.

If you choose to link your accounts to other accounts for which you serve as trustee or custodian (fiduciary), your account may receive a financial benefit, which could be a violation of your fiduciary duties. We are not responsible for your decision to link fiduciary accounts. You should carefully consider this decision and consult with your legal advisor if necessary. Refer to your product information to determine which qualifying accounts are eligible to be linked, any additional requirements and the benefits from linking accounts.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.
Return to Table of Contents
Page 17 of 24
Effective 5/17/2020

Case 19-44208    Doc# 298    Filed: 08/11/20    Entered: 08/11/20 14:31:36    Page 38 of 51

## 2. Statements and notices
We will make a monthly account statement available for checking and savings accounts during each statement period. The statement period may or may not be a calendar month, but in most cases it won't be more than 32 days or less than 28. The specific dates covered by your account statement will be on your statement.

You will receive statements by mail unless you choose paperless statements or if your account has had no activity other than interest we paid. If you receive paper statements, we will mail them through U.S. mail to the current address listed in our records. We may change your mailing address if we receive an address change notice. Checking and savings statements are also generally available through chase.com or Chase Mobile unless the product indicates otherwise.

We have made the statement available to you on the day we mail your paper statement or notify you that the paperless statement is available, even if your current address or email is invalid.

We may send you other notices related to your account. If you are enrolled in chase.com or Chase Mobile, some notices may only be available electronically. We send some notices only in paper form. You agree that sending the statement or notice to one owner of an account qualifies as sending it to all owners, even if all owners don't have access to the mailing address of record for the account.

## 3. Combined statements
Checking, savings and CD accounts with at least one common owner may be combined on a single statement, either with or without your request. However, we may send you separate statements at any time for any reason without prior notice. If accounts are included on a combined statement and you don't want that, notify us and we'll separate the statements. That change will affect only future statements.

Linked accounts do not have to be on a combined statement to receive the benefits of linking, and combining accounts on a single statement does not mean that the accounts are linked.

Each owner of each account listed on the statement can request a copy of a statement and will be able to view all account activity for all accounts on that statement through chase.com or Chase Mobile.

## 4. Options for receiving checks
We offer three choices for how you can view or receive copies of checks you've written or authorized:

- "Check safekeeping" means we keep images of your checks, which are available through chase.com. We do not include your paid checks or images of them with your statement. Some accounts require check safekeeping.

- "Image statement" means you will receive images of the front of your paid checks on your account statement.

- "Check enclosure" means we return legal copies of your paid checks with your account statement. This feature is not offered on all accounts.

If you have multiple personal checking accounts on a single statement and one of them uses check enclosure, all others will use check safekeeping. You agree that when we send a statement we have made the statement available to you, even if we do not send originals or images with the statement. We will destroy original checks after a reasonable period of time we determine.

If for any reason we can't provide a copy of your check, you agree that we will not be liable for more than the face amount of the check. We cannot provide originals or images of checks that are sent to us as electronic transfers. Additionally, other banks may send us electronic images instead of original checks, so we can provide a copy of the image, but not the original check.

## C. Telephone and Electronic Communication
We may record and/or monitor any of our telephone conversations with you. If we do record, we do not have to keep the recordings, unless the law says we must. We may use your voice to verify your identity.

When you give us your mobile number, we have your permission to contact you at that number about all of your Chase or J.P. Morgan accounts. Your consent allows us to use text messaging, artificial or prerecorded voice messages and automatic dialing technology for informational and account service calls, but not for telemarketing or sales calls. It may include contact from companies working on our behalf to service your accounts. Message and data rates may apply. You may contact us anytime to change these preferences. If you give us your email address, you agree that we may send servicing messages (such as fraud alerts and hold alerts) related to your accounts to that address.

We may send communications electronically, such as by email or text message, rather than through U.S. mail or other means, unless the law says otherwise.

## D. Other Fees for Your Account

### 1. Fees
You agree to pay all fees applicable to your account. We provided you a schedule of fees when you opened your account, and we will notify you of any changes. We may subtract these fees from your balance, even if the fee makes your balance negative. Refer to the Fee Schedule for specific fee information.

### 2. Savings Withdrawal Limit Fee
If you make more withdrawals or transfers out of your savings account than your account terms permit in a monthly statement period, we will charge a Savings Withdrawal Limit Fee. This fee is based on all withdrawals and transfers, not only those that are limited by federal regulation.

## E. Setoff and Security Interest
If you owe a debt to us or any of our affiliates (either now or in the future), you grant us a right of setoff to, and a security interest in, all of your accounts to secure the debt. Debts include any overdrafts or fees you owe, as well as amounts owed us by another person or entity if you have guaranteed that you will pay their debts. If the debt is due or overdue, we may use the funds in any of your accounts to pay all or part of the debt. If your account is a joint account, we may use the funds in the joint account to pay the debt of any account owner. Our security interest will be governed by Uniform Commercial Code Article 9, whether Article 9 applies by its terms or not. We do not have to give you any prior notice to apply the funds. You expressly agree that our rights extend to any electronically deposited federal or state benefit payments (including Social Security benefits). If you don't want your benefits applied in this way, you may change your direct deposit instructions at any time with the person or organization paying the benefits. The right of setoff does not apply if the debt is created under a personal credit card plan.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.
Page 18 of 24
Effective 5/17/2020
Return to Table of Contents

If any federal benefits or other payments are deposited to your account after you become ineligible to receive them, we may setoff against any of your accounts to recover the payments if we are obligated to return funds to the payor.

## F. Account Alerts and Text Banking

If you receive or otherwise use Account Alerts or text banking, you agree to the following terms. If you are enrolled with chase.com, the terms of the Online Service Agreement control the terms of these services instead.

- We may use a telephone number, email address or other delivery point we have in our records for you or other contact information that you provide to us for these services so we can send you certain information about your account. You may be automatically enrolled to receive certain Account Alerts via email. To manage your Alerts preferences or cancel Account Alerts, use chase.com or Chase Mobile or call us.
- We will send Account Alerts or text banking messages through your service provider, who will act as your agent and deliver them to you. Delivery of alerts may be delayed for various reasons, including service outages affecting your phone, wireless, or Internet provider; technology failures; and system capacity limitations.
- We do not charge for Account Alerts or text banking, but message and data rates may apply. **To cancel text banking services, send STOP to 24273 at any time.** For help or information on text banking, send HELP to 24273 or contact us at 1-877-242-7372.
- Account Alerts and text banking are provided for your convenience and do not replace your monthly statement, which is the official record of your account. Anytime you review your balance, keep in mind it may not reflect all transactions, including recent debit card transactions or checks you have written.
- You understand we may not encrypt information when it is sent to you through these services. This information may include personal or confidential information about you, such as account activity or the status of your account.

You understand we are not liable for losses or damages from any disclosure of account information to third parties, non-delivery, delayed delivery, misdirected delivery or mishandling of, or inaccurate content in Account Alerts or information sent through text banking. If we suffer a loss, cost or expense because you provide an incorrect telephone number, email address or other delivery point, or you violate applicable laws, you have to pay that amount to us.

# VII. Maintaining Your Certificate of Deposit (CD) Account

A certificate of deposit, or CD, is a deposit account with us for a specified period of time. This disclosure covers both retirement and non-retirement CD products. By opening your CD, you agree to keep the amount deposited (principal) on deposit.

Here are a few things you should know about CDs:

**Term:** The term is the number of days, months or years you agree to leave your money in the account.

**Maturity date and grace period:** The maturity date is the last day of your CD's term. The grace period is the 10 days after the maturity date for CDs with a term of 14 days or longer. On the maturity date or during the grace period you can change the term of your CD, make additional deposits (for non-retirement CDs only), or withdraw your CD principal without paying an early withdrawal penalty.

**CD ladders:** Chase may offer a CD ladder, which is a group of four CDs opened at the same time for the same amount but with different terms. When each CD matures, its term will change to the longest term of the original group. For example, in a 12-month ladder, we will open four CDs with original terms of 3, 6, 9 and 12 months. When each CD matures, its new term will be 12 months. The result will be four 12-month CDs with a CD maturing every three months.

**Automatically renewable CD:** An automatically renewable CD will renew on the maturity date for the same term unless 1) you have a different renewal term as part of a CD ladder; 2) you change or close the account or 3) we notify you otherwise. Once your CD renews, any reference to the maturity date means the last day of the new term. For the renewal term, your CD will earn interest for the term and amount at the CD standard rate unless you qualify for the CD relationship rate. If your CD is closed during the grace period, it will not earn interest on or after the maturity date.

**Single maturity CD:** A single maturity CD will not automatically renew on the maturity date and won't earn or be paid interest on or after that date.

**Interest:** We use the daily balance method to calculate interest on your CD. This method applies a periodic rate each day to your balance. Interest begins to accrue on the business day of your deposit. Interest for CDs is calculated on a 365-day basis, although some business CDs may calculate interest on a 360-day basis. The Annual Percentage Yield (APY) disclosed on your deposit receipt or on the maturity notice assumes interest will remain on deposit until maturity. On maturities of more than one year, interest will be paid at least annually.

You may withdraw any paid or credited interest without penalty during your CD's term or at maturity. On the maturity date, interest will become principal of the renewed CD. A withdrawal will reduce earnings.

**Early withdrawal penalties: There is a penalty for withdrawing principal prior to the maturity date.**

**For Personal CDs:**

- If the term of the CD is less than 6 months, the early withdrawal penalty is 90 days of interest on the amount withdrawn, but not more than the total amount of interest earned during the current term of the CD.
- If the term of the CD is 6 months to less than 24 months, then the early withdrawal penalty is 180 days of interest on the amount withdrawn, but not more than the total amount of interest earned during the current term of the CD.
- For terms 24 months or more, the early withdrawal penalty is 365 days of interest on the amount withdrawn, but not more than the total amount of interest earned during the current term of the CD.
- If the withdrawal occurs less than seven days after opening the CD or making another withdrawal of principal, the early withdrawal penalty will be calculated as described above, but it cannot be less than seven days' interest.
- The amount of your penalty will be deducted from principal.

**For Business CDs:**

- If the term of the CD is less than 12 months, the early withdrawal penalty is equal to $25 plus 1% of the amount withdrawn.
- For terms of 12 months or more, the early withdrawal penalty is equal to $25 plus 3% of the amount withdrawn.
- If the withdrawal occurs less than seven days after opening the CD or making another withdrawal of principal, the early withdrawal penalty will be calculated as described above, but it cannot be less than seven days' interest.

JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.
Effective 5/17/2020

Return to Table of Contents

Case 19-44263  Doc# 298   Filed: 08/11/20   Entered: 08/11/20 14:31:36   Page 40 of
51

- The amount of your penalty will be deducted from principal.

**Waiving early withdrawal penalties for Personal CDs:**

We will waive early withdrawal penalties under the circumstances described below, unless these withdrawals occur less than seven days after the account was opened or a previous withdrawal was made.

For non-retirement CDs:
- Death of a CD owner or a grantor of a revocable family/living trust;
- Disability of a CD owner;
- A court's determination that a CD owner is incompetent; and
- Re-titling of a CD to transfer ownership of funds into a living trust without moving funds from the bank and where no change in term or rate occurs.

For retirement CDs:
- If the retirement CD owner is under age 59½ and one of the reasons defined by sections 72(t) and 530 of the Internal Revenue Code applies, such as payment of qualified education expenses or first-time home purchase expenses; and
- If the retirement CD owner is withdrawing an excess annual retirement contribution amount and any corresponding earnings.

We will also waive early withdrawal penalties for retirement CDs under the circumstances described below, regardless of when the early withdrawal is made in relation to the CD opening or a previous withdrawal.

- Death or disability of a retirement CD owner;
- A court's determination that a retirement CD owner is incompetent; and
- If the retirement CD owner is age 59½ or older and the funds are taken as an IRS-reportable distribution via cash, check, or deposit or transfer to a non-retirement account. This waiver does not apply if the transfer is to a retirement account at another financial institution.

**Waiving early withdrawal penalties for Business CDs owned by a sole proprietorship:**

We will waive early withdrawal penalties under the circumstances described below, unless these withdrawals occur less than seven days after the account was opened or a previous withdrawal was made.

- Death of a CD owner or a grantor of a revocable family/living trust;
- Disability of a CD owner;
- A court's determination that a CD owner is incompetent; and
- Re-titling of a CD to transfer ownership of funds into a living trust without moving funds from the bank and where no change in term or rate occurs.

# VIII. Closing Your Account

Either you or we may close your account (other than a CD) at any time for any reason or no reason without prior notice. We are not required to close your account at your request if you have pending transactions, the account is overdrawn or your account is subject to legal process (such as a garnishment, attachment, execution, levy or similar order). In those cases, we will restrict your account against all future withdrawals other than under legal process until pending transactions are paid or returned, the balance is no longer negative, and any legal restriction has been released. After we restrict your account in preparation for closing, we will not pay any additional interest on the account. We may automatically close your account if the balance is $0 or negative. Either you or we may close your CD account on any maturity date without cause.

We may send you written notice that we have closed or will close your account and return the balance less any fees, claims, setoffs or other amounts if the balance is greater than $1. After your account is closed, we have no obligation to accept deposits or pay any outstanding checks, but we may reopen your account if we receive a deposit. We will have no liability for refusing to honor any check drawn on a closed account. We have the right to advise consumer reporting agencies and other third party reporting agencies of accounts closed for misuse, such as overdrafts.

# IX. Other Legal Terms

## A. Rules Governing Your Account

This agreement, all accounts and services provided to you, and any dispute relating to those accounts and services are governed by federal law and, when not superseded by federal law, the law of the state where your account is located.

Here's how we determine where your account is located:
- If you applied for the account in person at one of our banking offices, then the account is located in the state where you applied.
- If you applied in person for a business account with one of our representatives somewhere other than at one of our banking offices (your place of business, for example), your account is located in the state where the representative's business office is located.
- If you applied for the account by mail, digitally, or through other remote means, and your address as recorded in our records was in a state where we had a branch at the time, then the account is located in that state, which for joint accounts will be based on the address of the owner whose name was listed first.
- In all other cases your account will be governed by Ohio law.

Business trust accounts for professionals regulated by a state (or a self-regulatory body under a state's laws) are located in the designated state.

## B. General Liability

Any provision of this agreement that limits the bank's liability does not negate the bank's duty (if any) under applicable law to act in good faith and with reasonable care. If any provision of this agreement is determined to limit the bank's liability in a way prohibited by applicable law, the provision will nevertheless be enforced to the fullest extent permitted under that law.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.
Return to Table of Contents
Page 20 of 24
Effective 5/17/2020

We will not be liable for anything we do when following your instructions. In addition, we will not be liable if we do not follow your instructions if we reasonably believe that your instructions would expose us to potential loss or civil or criminal liability, or conflict with customary banking practices. **WE WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IF WE FAIL TO STOP PAYMENT ON AN ITEM, OR PAY AN ITEM BEARING AN UNAUTHORIZED SIGNATURE, FORGED SIGNATURE, OR FORGED ENDORSEMENT OR ALTERATION, OUR LIABILITY, IF ANY, WILL BE LIMITED TO THE FACE AMOUNT OF THE ITEM.**

If this agreement conflicts with any statements made by one of our employees or by our affiliates' employees, this agreement will govern.

## C. Restricting Your Account; Blocking or Delaying Transactions

There are many reasons we may decline or prevent transactions to or from your account, but we generally do it to protect you or us, or to comply with legal requirements. We may decline or prevent any or all transactions to or from your account. We may refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances:

- Your account is involved in any legal or administrative proceeding;
- We receive conflicting information or instructions regarding account ownership, control or activity;
- We suspect that you may be the victim of a fraud, scam or financial exploitation, even though you have authorized the transaction(s);
- We suspect that any transaction may involve illegal activity or may be fraudulent;
- We are complying in our sole judgment, with any federal, state or local law, rule or regulation, including federal asset control and sanction rules and anti-money-laundering rules, or with our policies adopted to assure that we comply with those laws, rules or regulations; or
- We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.

We also may limit cash deposits to, or withdrawals from, your account (or all of your accounts collectively) in a single transaction or total withdrawals or deposits during any period of time, or who may make deposits, in order to reduce risk and/or enhance our efforts to comply with applicable law.

We can assign and transfer your account information and documentation to a replacement account number at our discretion. We may make this assignment when your account is reported compromised by you or any signer. If we issue you a replacement account number, this Deposit Account Agreement governing you and your account will continue to apply, without interruption, as if you retained the discontinued account number.

We will have no liability for any action we take under this section and we may take such action without advanced notice.

## D. Changes to the Agreement

We may change the terms of this agreement, including fees and features of your account, at any time. If any change would adversely affect you, we will notify you in advance, unless the change is necessary to comply with a legal requirement.

For CDs, changes that would adversely affect you will be effective on the next maturity date.

If we transfer your account to a different business unit within the bank, we may give notice in the same manner and provide you a different deposit agreement to govern your account. You agree that notice of these changes may be provided to any joint owner.

We are not required to send you notice of interest rate and Annual Percentage Yield changes for variable rate accounts or notice of changes in printing fees for documents (such as checks).

We may direct you to a branch or chase.com for the content of any changes or the revised agreement unless the law requires a different method. By maintaining your account after the effective date of any change, you agree to the change.

## E. Our Responsibility to Obtain Personal Information

Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or business who opens an account. We require the following information or documents as a condition to your opening an account:

- For a personal account: your name; residential address; date of birth; and Social Security number, driver's license or other identifying documents
- For a business account: your business name, taxpayer identification number and business address; the name, residential address, date of birth and Social Security number of each signer, so we can verify the signer's identity; and documents to verify the business's existence.

Our policies may require additional information about you or any person associated with you or with the account when or after you open the account to assure that we comply with "Know Your Customer" requirements. We may restrict or close your account if we are unable to obtain information in order to satisfy our "Know Your Customer" requirements. By opening an account with us, you confirm that neither you nor any beneficial owner of any account is covered by any sanctions programs administered or enforced by the U.S. Department of the Treasury, Office of Foreign Asset Control.

## F. Prohibited Activities and Tax Reporting

We strictly prohibit the use of any account to conduct transactions (including, without limitation, the acceptance or receipt of credit or other receipt of funds through an electronic funds transfer, or by check, draft or similar instrument, or the proceeds of any of the foregoing) that are related, directly or indirectly, to unlawful Internet gambling. The term "unlawful Internet gambling," as used in this Notice, shall have its meaning set forth in 12 C.F.R. Section 233.2(bb). You agree not to conduct any transactions through the account that directly or indirectly involve or are related to unlawful Internet gambling, including, without limitation, the acceptance or receipt of any funds or deposits in connection therewith.

You also agree not to use your account for any other illegal activity. We may refuse any gambling transaction, whether lawful or not.

Transactions in your account are also subject to applicable clearinghouse and Federal Reserve rules and regulations. You will not use your account to send or receive a payment on behalf of anyone who is not a U.S. citizen or resident using The Clearing House Association's Real-Time Payment network.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2020 JPMorgan Chase & Co.

Return to Table of Contents

Page 21 of 24
Effective 5/17/2020

Case 19-44263 Doc# 298 Filed: 08/11/20 Entered: 08/11/20 14:31:36 Page 42 of 51

You agree that you are responsible for your tax obligations and any funds in, or to be deposited in, your accounts are not proceeds from any criminal activity (including, but not limited to, tax crimes). Funds in, and any income derived from, your accounts will be disclosed to the relevant tax authorities, if required by law. All information that has been provided is complete and accurate, including any information pertaining to your country of citizenship, residence, principal place of business and any other relevant information to determine legal and tax status. You agree to notify us and/or provide us with any changes related to your tax affairs as we may request in order to comply with our regulatory obligations.

## G. Death or Incompetence of Account Owner or Sole Signer

Tell us immediately if any account owner dies or is declared incompetent by a court. We may act as if all owners are alive and competent until we receive notice otherwise.

After we receive notice of death or incompetence, we may freeze your balance, refuse to accept transactions, and reverse or return deposits. We are also not required to release your funds until we receive any documents we reasonably request to verify your death or incompetence, as well as who is entitled to the funds. If you die while residing outside the United States, we may require a personal representative to be appointed by a court in a United States jurisdiction. If we have any tax liability because of paying your balance to your estate, the estate will be responsible for repaying us the amount of that tax. If an account owner authorizes any transaction, but it's not presented for payment until after that owner dies, we are authorized to pay the transaction. If you owe us a debt at the time of your death, we are permitted to exercise our right of setoff (our right to apply funds in one account to the debt associated with another account) or security interest rights against the funds credited to your balance after your death. We have these rights even if a surviving joint owner, a "payable on death" payee, or a beneficiary of an "in trust for" or "trustee for" account has rights to the account.

After we receive notice of death or incompetence of the sole signer on a business organization's account, we may freeze the balance, refuse to accept transactions, and reverse or return deposits. We are also not required to release the organization's funds until we receive any documents we reasonably request to verify the death or incompetence of the signer and to establish a new person's authority to act on behalf of the organization in transacting on or closing the organization's account.

## H. Adverse Claims

If there are conflicting instructions or there is any dispute regarding your account, we may take any action, including refusing to disburse any funds in the account to any person until all persons claiming an interest consent in writing to a resolution of the dispute; or a court of proper jurisdiction authorizes or directs the payment; or the person with a conflicting claim withdraws his or her claim in writing. We may also place funds in a court (this is called an interpleader action) for resolution. If any person notifies us of a dispute, we do not have to decide if the dispute has merit before we take further action. We may take these actions without any liability and without advance notice, unless the law says otherwise.

## I. Authorization to Share Information

You authorize us to share information about you and your account with affiliates and third parties, unless the law or our Privacy Notice prohibits us from doing so. Please see our *Privacy Notice* for your choices about information sharing.

## J. Disputing Information Reported to a Consumer Reporting Agency

If you believe that we have reported inaccurate or incomplete information about your account to a consumer reporting agency, you have the right to file a dispute with that consumer reporting agency. You may also submit a dispute directly to us by writing to the address in the *How to Contact Us* section. Provide your name, address and phone number; the account number; the specific information you are disputing; an explanation of why it is inaccurate or incomplete; and any supporting documentation.

## K. Legal Process and Requests for Information

If we receive any legal process relating to you or your account, you authorize us to comply with it. "Legal process" means any document that appears to have the force of law that requires us to hold or pay out funds from your account, including a garnishment, attachment, execution, levy or similar order. We do not have to determine whether the legal process was validly issued or enforceable. If a hold is in effect, we will continue to charge any applicable fees even though the account cannot be closed. We also may remove your Overdraft Protection if a hold is placed, but you may ask us to relink your accounts after the hold is removed. As permitted by law, we will deduct from your balance a Legal Processing Fee or costs and expenses we incur in complying with the order, or both.

If any action, including administrative proceedings, garnishment, tax levies, restraining orders or another action is brought against you or your account, you will be liable to us for any loss, cost or expense (including attorneys' fees) resulting from our compliance with any legal process.

If we receive any subpoena, court order or request for information or documents from a government entity or arbitration panel relating to your account, we are authorized to comply with it.

## L. Abandoned Property

Each state has laws that govern when accounts are considered abandoned and when we are required to send a customer's funds to the state.

## M. English Language — Other Language Preferences

The terms of this agreement and the products and services we provide are governed by the English language. As a courtesy, we make some of our forms, disclosures and documents, including this agreement, available in languages other than English. However, many important bank documents, and some products and services related to this account, are provided only in English. If there is any difference in meaning between the English and non-English version of any of our documents, the English version applies and is available upon request.

## N. Referrals

If you request it, our employees may at times provide contact information about third parties, such as lawyers, accountants, or contractors who offer products or services to the public. Some of these third parties may be our customers. We provide this information only as a courtesy and convenience to you and the third party, but in some cases we may be compensated for a referral. We do not make any warranties or representations about the third parties or their products or services. If you choose to do business with any third party, that decision is yours alone, and we are not responsible for the third party's performance or to help resolve any dispute between you and the third party. Our employees may also receive compensation when you purchase a Chase product based on their referral.

## O. Special Provisions for Pass-Through Accounts

If you have opened a deposit account on behalf of the beneficial owner(s) of the funds in the account (for example as a trustee, agent, nominee, guardian, executor, custodian or funds held in some other capacity for the benefit of others), those beneficial owners may be eligible for "pass-through" insurance from the FDIC. This

Return to Table of Contents

means the account could qualify for more than the standard maximum deposit insurance amount (currently $250,000 per depositor in the same ownership capacity). If the account has transactional features, you as the account holder must be able to provide a record of the interests of the beneficial owner(s) in accordance with the FDIC's requirements as specified below. The FDIC has published a guide that describes the process to follow and the information you will need to provide in the event Chase fails. That information can be accessed on the FDIC's website at www.fdic.gov/deposit/deposits/brokers/part-370-appendix.html.

In addition, the FDIC published an Addendum to the guide, section VIII, which is a good resource to understand the FDIC's alternative recordkeeping requirements for pass-through insurance. The Addendum sets forth the expectations of the FDIC for pass-through insurance coverage of any deposit accounts, including those with transactional features. The Addendum will provide information regarding the records you keep on the beneficial owners of the funds, identifying information for those owners, and the format in which to provide the records to the FDIC upon bank failure. You must be able to provide this information in a timely manner in order to receive payment for the insured amount of pass-through deposit insurance coverage as soon as possible. You will have an opportunity to validate the capability to deliver the required information in the appropriate format so that a timely calculation of deposit insurance coverage can be made; further instructions relating to this opportunity will be communicated at a later time.

You agree to cooperate fully with us and the FDIC in connection with determining the insured status of funds in such accounts at any time. In the event of a bank failure, you agree to provide the FDIC with the information described above in the required format within 24 hours of a bank failure. As soon as a receiver is appointed, a hold will be placed on your account and that hold will not be released until the FDIC determines that you have provided the necessary data to enable the FDIC to calculate the deposit insurance. You understand and agree that your failure to provide the necessary data to the FDIC may result in a delay in receipt of insured funds and may result in legal claims against you from the beneficial owners of the funds in the account. If you do not provide the required data, your account may be held or frozen until the information is received, which will cause a delay when the beneficial owners could receive funds. Despite other provisions in this Agreement, this section survives after a receiver is appointed for us, and the FDIC is considered a third party beneficiary of this section.

## P. Sub-accounts

For accounting purposes, all checking accounts consist of two sub-accounts: 1) a transaction sub-account where all deposits, withdrawals and fees are posted, and 2) a savings holding sub-account, where available balances above a certain level are transferred daily. Funds will be retransferred to your transaction sub-account to meet your transactional needs; however, all balances in the holding sub-account will be transferred to the transaction sub-account with the sixth transfer in any calendar month or monthly statement period.

Both sub-accounts are treated as a single account for purposes of your deposits and withdrawals, earning interest, access and information, tax reporting, fees, etc.

## Q. Permitted Time for Filing a Lawsuit

You must file any lawsuit or arbitration against us within two years after the cause of action arises, unless federal or state law or an applicable agreement provides for a shorter time. This limit is in addition to limits on notice as a condition to making a claim. If applicable state law does not permit contractual shortening of the time during which a lawsuit must be filed to a period as short as two years, you and we agree to the shortest permitted time under that state's laws.

We abide by federal and applicable state record retention laws and may dispose of any records that we retained or preserved for the period set forth in these laws. Any action against us must be brought within the period that the law requires us to preserve records, unless applicable law or this agreement provides a shorter limitation period. Any action against us on an automatically renewable CD must be brought within the time that the law requires us to preserve records based on the stated maturity date in the most recent record of the CD.

## R. Location of Legal Proceedings

If you file any lawsuit or other legal proceeding against us that is connected in any way to your accounts or services, you agree to do so in an appropriate court in the state where your account is located. If we file any lawsuit or legal proceeding that is connected in any way to your accounts or services, you consent to jurisdiction and venue in an appropriate court in the state where your account is located. If either party chooses to have disputes resolved by arbitration, the section *Arbitration; Resolving Disputes* governs the process and location of the arbitration proceedings.

## S. Pre-judgment Interest Rate

If either you or we are awarded a judgment against the other in connection with your account, the rate of interest earned before judgment on the judgment amount will be the rate of interest the account earned during that period unless state law requires a different rate. If the account is not interest-bearing, the rate will be the lowest generally available rate for a personal interest-bearing checking account.

## T. Assignment of Agreement and Successors

This agreement will be binding on your personal representative, executors, administrators and successors, and on our successors and assigns.

You may not assign, transfer or grant a security interest in your account to anyone other than us without our written consent. No assignment will be valid or binding on us, and we will not be considered to have knowledge of it, until we consent and note the assignment in our records. However, by noting the assignment, we do not have any responsibility to assure that the assignment is valid. Any permitted assignment of your account is subject to our setoff rights.

## U. No Waiver

If we fail to exercise any right, that does not mean that we waive that right or any other right, and we may still enforce all of our rights in the future.

# X. Arbitration; Resolving Disputes

You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).

This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW. UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

**What claims or disputes are subject to arbitration?**

Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. All such claims or disputes are referred to in this section as "Claims."

The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

**Can I (customer) cancel or opt out of this agreement to arbitrate?**

You have the right to opt out of this agreement to arbitrate if you tell us within 60 days of opening your account. If you want to opt out, call us at 1-800-935-9935 or see a banker. Otherwise this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you file for bankruptcy.

**What about class actions or representative actions?**

Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. YOU AND WE AGREE NOT TO:

1. SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING;

2. SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE;

3. BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR

4. SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

If these terms relating to class or representative procedures are legally unenforceable for any reason with respect to a Claim, then this agreement to arbitrate will be inapplicable to that Claim, and the Claim will instead be handled through litigation in court rather than by arbitration. No arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.

**Does arbitration apply to Claims involving third parties?**

Arbitration applies whenever there is a Claim between you and us. If a third party is also involved in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well, and it must be named as a party in accordance with the rules of procedure governing the arbitration. No award or relief will be granted by the arbitrator except on behalf of, or against, a named party. For purposes of arbitration, "you" includes any person who is listed on your account, and "we" includes JPMorgan Chase Bank, N.A., all its affiliates, and all third parties who are regarded as agents or representatives of ours in connection with a Claim. (If we assign your account to an unaffiliated third party, then "we" includes that third party.) The arbitration may not be consolidated with any other arbitration proceeding.

**How does arbitration work?**

The party filing a Claim in arbitration must select either: JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or this agreement, this arbitration provision and this agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure.

The arbitrator will decide the Claim in accordance with all applicable law, including recognized principles of equity and statutes of limitations, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. A single arbitrator will conduct the arbitration and will use applicable substantive law, including the Uniform Commercial Code, consistent with the FAA and the applicable statutes of limitations or conditions precedent to suit, and will honor claims of privilege recognized at law. The arbitrator can award damages or other relief provided for by law to you or us, but not to anyone else. The arbitrator's authority is limited to the Claims between you and us.

**Is the arbitrator's decision final? Is there an appeal process?**

The arbitrator's decision will be final and binding on the parties. A party can file a written appeal to the arbitration administrator within 30 days of award issuance. The appeal must request a new arbitration in front of three neutral arbitrators designated by the same arbitration administrators. The panel will reconsider all factual and legal issues, following the same rules of procedure, and will make decisions based on majority vote. Any final arbitration award will be binding on the named parties and enforceable by any court having jurisdiction.

**Who will pay for costs?**

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law. If you consider that you are unable to afford any fees that would be yours to pay, you may request that we pay or reimburse them, and we will consider your request in good faith.

**How do I (customer) file an arbitration claim?**

Rules and forms may be obtained from, and Claims may be filed with, JAMS (1-800-352-5267 or www.jamsadr.com) or the AAA (1-800-778-7879 or www.adr.org). Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

DEPOSIT ACCOUNT AGREEMENT

JPMorgan Chase Bank, N.A. Member FDIC

© 2020 JPMorgan Chase & Co.

Return to Table of Contents

Page 24 of 24

Effective 5/17/2020

Case 19-44208 Doc# 298 Filed: 08/11/20 Entered: 08/11/20 14:31:36 Page 45 of 51



Rev. April 2020

| FACTS | WHAT DOES CHASE DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>■ Social Security number and income<br>■ account balances and transaction history<br>■ credit history and payment history |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Chase chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Chase share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** –<br>to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** –<br>information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** –<br>information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | Yes | Yes |

| To limit our sharing | ■ Call 1-888-868-8618 - our menu will prompt you through your choice(s). We accept operator relay calls.<br>■ Chase Sapphire® customers please call 1-800-493-3319.<br>■ **Visit us online: chase.com/privacypreferences.**<br><br>**Please note:**<br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|

| Questions? | ■ Call 1-888-868-8618 - our menu will prompt you through your choice(s). We accept operator relay calls.<br>■ Chase Sapphire® customers please call 1-800-493-3319. |
|---|---|

## Who we are

| | |
|---|---|
| **Who is providing this notice?** | The JPMorgan Chase & Co. family of companies. A partial list of its U.S. consumer financial companies is located at the end of this document. |

## What we do

| | |
|---|---|
| **How does Chase protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We authorize our employees to get your information only when they need it to do their work, and we require companies that work for us to protect your information. |
| **How does Chase collect my personal information?** | We collect your personal information, for example, when you<br>■ open an account or make deposits or withdrawals from your account<br>■ pay your bills or apply for a loan<br>■ use your credit or debit card<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>■ sharing for affiliates' everyday business purposes – information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *Our affiliates include companies with a Chase or J.P. Morgan name and financial companies such as J.P. Morgan Securities LLC* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>■ *Nonaffiliates we share with can include companies such as retailers, auto dealers, auto makers and membership clubs* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>■ *Our joint marketing partners include categories of companies such as insurance companies* |

## Other important information

**State laws:**

VT: Accounts with a Vermont mailing address are automatically treated as if they have limited the sharing as described on page 1. For joint marketing, we will only disclose your name, contact information and information about your transactions.

NV: We are providing you this notice pursuant to Nevada law. If you prefer not to receive marketing calls from us, you may be placed on our Internal Do Not Call List by calling 1-800-945-9470, Chase Sapphire® customers please call 1-800-493-3319, or by writing to us at P.O. Box 734007, Dallas, TX 75373-4007.

For more information, contact us at the address above, or email Privacy.Info@JPMChase.com, with "Nevada Annual Notice" in the subject line. You may also contact the Nevada Attorney General's office: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; telephone number: 1-702-486-3132; email BCPINFO@ag.state.nv.us

CA: Accounts with a California mailing address are automatically treated as if they have limited the sharing with nonaffiliates as described on page 1. CA residents are provided a CA notice for additional choices.

**Who is providing this notice?**

JPMorgan Chase Bank, N.A.    Chase Insurance Agency, Inc.    J.P. Morgan Securities LLC

Separate policies may apply to customers of certain businesses, such as J.P. Morgan Private Bank.

# EXHIBIT 2

1  BUCHALTER, A Professional Corporation
   VALERIE BANTNER PEO (SBN: 260430)
2  55 Second Street, Suite 1700
   San Francisco, CA 94105-3493
3  Telephone: (415) 227-0900
   Fax: (415) 227-0770
4  Email: vbantnerpeo@buchalter.com

5  Attorneys for Creditor
   JPMORGAN CHASE BANK N.A.
6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                   OAKLAND DIVISION

11  In re                              Bankruptcy Case No. 19-41283 (WJL)

12  JADOOTV, INC.                      Chapter 11

13              Debtor.                R.S. No. BN-001

14

15                                     ORDER LIFTING THE AUTOMATIC
                                       STAY AND GRANTING RELATED
                                       RELIEF

16
                                       Date:        September 9, 2020
17                                     Time:        10:30 a.m.
                                       Ctrm:        TELEPHONIC
18                                                  Room 220
                                                    1300 Clay Street
19                                                  Oakland, CA 94612

20

21        A hearing was held at the above-captioned date and time on the *Motion to Approve*

22  *Stipulation for Relief from the Automatic Stay* ("**Motion**") filed by JPMorgan Chase Bank, N.A.

23  ("**JPMC**") and the *Stipulation For Relief From The Automatic Stay* ("**Stipulation**") between

24  JPMC and JadooTV, Inc. ("**Debtor**"), attached as Exhibit 1 to the Motion. Appearances were

25  stated on the record.

26        The Court, having considered the Motion, finds that the Court has jurisdiction over the

27  parties and the subject matter, and further finds that notice was appropriate under the

28  circumstances, and other good cause appearing, hereby

ORDERS, as follows:

1.        The Motion is granted;

2.        The Stipulation is approved;

3.        The PPP Motion is denied as moot;

4.        Relief from the automatic stay under 11 U.S.C. § 362(a) is granted to allow JPMC to exercise all of its rights and remedies under the Account Agreement,[1] the PPP Note and applicable law, including the right to offset $224,460.00 from the Account;

5.        The fourteen-day stay of this Order prescribed under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is hereby waived; and

6.        This Order shall be binding and effective upon any conversion of this case to another chapter under the Bankruptcy Code.

** END OF ORDER **

APPROVED AS TO FORM:

DATED: August 11, 2020                    **KELLER BENVENUTTI KIM, LLP**

By:    /s/ Jane Kim
                                                            JANE KIM
                                                            Attorneys for Debtor JadooTV, Inc.

---

[1] Capitalized terms used herein shall have the meanings ascribed to them by the Stipulation.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

## COURT SERVICE LIST

**Mark Punzalan**
Chan Punzalan LLP
2000 Alameda de las Pulgas, Suite 154
San Mateo, CA 94403